JUAN BAUTISTA JECKER, LUIS JECKER, THOMAS DE LA TORRE, GEIDERO DE LA TORRE, AND JOSE E. FERNANDEZ, MERCHANTS, TRADING UNDER THE NAME AND STYLE OF JECKER, TORRE & COMPANY, APPELLANTS, v. JOHN B. MONTGOMERY. — AND JOHN B. MONTGOMERY, APPELLANT, v. JUAN BAUTISTA JECKER, LUIS JECKER, THOMAS DE LA TORRE, GEIDERO DE LA TORRE, AND JOSE E. FERNANDEZ, MERCHANTS, TRADING UNDER THE NAME AND STYLE OF JECKER, TORRE & COMPANY.

During the war with Mexico, the Admittance, an American vessel, was seized in a port of California, by the commander of a' vessel of war of the United States,. upon suspicion of trading with the enemy. She was condemned as a lawful prize by. the chaplain belonging to one of the vessels of war upon that station, who had been authorized by the President of the United States to exercise admiralty jurisdiction in cases of capture.

The owners of the cargo filed a libel against the captain of the vessel of war, in the Admiralty Court for the District of Columbia. Being carried to the· Circuit Court, it was decided:

1. That the condemnation in California was invalid as a defence for the captors.
2. That the answer of the captors, having averred sufficient probable cause for the seizure of the cargo, and the libellants having demurred 'to this answer, upon the ' ground that the District Court had no right to adjudicate, because the property had not been brought within its jurisdiction, the demurrer was overruled, and judg- . ment was entered against the libellants.

The .judgment of the Circuit Court, upon the first point, was' correct, and upon the second point, erroneous.

The Prize Court established in California was. not authorized by the laws of the United States or the laws of nations.

The grounds alleged for the seizure of the vessel and cargo in the answer, viz., that the vessel sailed from New Orleans with the design of trading with the enemy, and did, in fact, hold illegal intercourse with them, are sufficient to subject both to condemnation, if they are supported by testimony.

And, if they were liable to capture and condemnation, the reasons assigned in the answer for not bringing them into a port of the United States and libelling them for condemnation, viz., that ·it was impossible do so consistently with the public interests, are sufficient, if supported' by proof, to justify the captors in selling ves-. sel and cargo in California, and to exempt them from damages on that account.

Jecker et al. *v.* Montgomery.

The Admiralty Court in the district had jurisdiction of the case, and it was the duty of the court to order the captors to institute proceedings in that court, to condemn the property as prize, by a day to be named in the order; and in default thereof, to be proceeded against upon the libel for an unlawful seizure.

The Admiralty Court, in the District of Columbia, had jurisdiction of such a libel for condemnation, although the property was not brought within its jurisdiction; and, if they found it liable to condemnation, might proceed to condemn it, although it was not brought within the custody or control of the court.

The necessity of proceeding to condemn as prize, does not arise from any difference between the Instance Court and the Prize Court, as known in England. The same court here possesses the instance and prize jurisdiction. But because the property of the neutral is not divested by the capture, but by the condemnation in a prize court; and it is not divested until condemnation, although, when condemned, the condemnation relates back to the capture.

As this libel is for the restitution of the property or the proceeds, probable cause of seizure is no defence. It is a good defence against a claim for damages, when the property has been restored, or lost after seizure without the fault of the captor. But, while the property or proceeds is withheld by the captor, and claimed as prize, probable cause of seizure is no defence.

The Circuit Court, therefore, erred in deciding that probable cause of seizure was a good defence.

THESE were appeals from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

The facts are fully stated in the opinion of the court.

The cases were argued together by *Mr. Coxe* and *Mr. Nelson*, for Jecker, Torre & Company, and by *Mr. Key* and *Mr. Johnson*, for Captain Montgomery.

The arguments on both sides took a wide range, and it is impossible to insert the entire views of the case taken by the respective counsel. The following are given as those bearing upon what appear to be the principal points.

The arguments were divided into two heads:

1st. The ground of defence taken in the answer of the respondent, that the property had been carried into the port of Monterey, a town in California, then occupied by the American forces, within the limits of Mexico, and there had been regularly proceeded against and condemned as prize of war, by a court exercising at that place admiralty jurisdiction.

The libellants demurred to this plea or defence, and both the District and Circuit Courts sustained the demurrer; and from this decision the respondent appealed. The arguments of the counsel upon this branch of the case, although of an interesting character, are omitted for want of room.

The second demurrer was also to a part of the answer, and was as follows:

"The libellants, as to so much of the answer of the respondent, filed in this case, as alleges and sets up any act or thing on the part of the captain and crew of the said ship Admittance, or any of omission or commission of any sort or kind, as a justifi-

cation of the said seizure of said ship or her cargo as lawful prize of war, or which might amount to probable cause of said seizure, demurs to the same; and for cause of demurrer avers and says, that this court in this cause has no rightful jurisdiction or authority to examine or adjudicate upon any question of prize, or of probable cause of capture as prize of war, but that the same belongs exclusively to the courts of the United States exercising prize jurisdiction, and having within its jurisdiction and control the property so seized or captured as prize, which this court has not, and, in consequence of the tortious and illegal acts of said respondent, as alleged and set forth in said libel, cannot have.

" Wherefore, and for other causes, these libellants do demur to so much of said answer as is above set forth.

"Coxe, *Advocate and Proctor for Libellants.*"

This demurrer was also sustained by the District Court, but the judgment was reversed by the Circuit Court, and from this decision the libellants appealed.

Upon this point the argument of the counsel for the libellants was as follows:

The respondent, however, insists that he has in this action a right to show —

1. An actual and sufficient case of prize of war, as a bar to the remedy asked in the libel.

2. Probable cause of seizure, as a bar to the action.

1st. This is a civil suit to recover back property originally belonging to libellants, of which they have been forcibly divested by defendants, under whose authority it has been sold and converted into money. Can the party in such a suit aver legal cause of capture and condemnation as prize without producing a valid decree of condemnation as prize by a court of competent jurisdiction?

If he can, then this singular anomaly and most dangerous precedent will be exhibited, that a captor may disregard the injunctions of the law, and his own paramount duty; omit to bring his prize into court; to institute prize proceedings; — but may retain the property in his own hands, or at his pleasure convert it into money; and when called upon to answer in a civil suit, set up as a defence an original cause of condemnation.

It will scarcely be doubted that the jurisdiction of the prize courts, in cases of prize, is exclusive. The nature and extent of this jurisdiction, as it exists in England, are distinctively given by Lord Mansfield in Lindo *v.* Rodney, Dougl. 613. 1 Kent, 353; Conkl. 354; Dunl. Ad. Pr. 26; 12 Wheat. 1, 11. In every respect it differs from the ordinary Court of Admiralty. "The manner of proceeding is totally different, the whole system of

litigation and jurisprudence in the Prize Court is peculiar to itself; it is no more like the Court of Admiralty than it is to any court in Westminster Hall." See particularly the language of Lord Mansfield, p. 616.

The claimant of the property cannot himself institute prize proceedings. They must always be had in the name of the government, to whom all prizes *primâ facie* belong. The only remedy the captured has is by monition, a proceeding *in personam* to compel the captors to perform their duty.

The ordinary Court of Admiralty has no more authority to condemn a prize than a court of common law; and should the doctrine asserted for this defendant prevail, these singular results must inevitably follow —

1st. The captors can never acquire any legal right to the property, unless by a decree of a prize court. This is, throughout, recognized in Home v. Camden, in 1 H. Bl. 476; 4 T. R. 382.; and especially in 2 H. Bl. 541, 542, in the unanimous opinion of the twelve judges.

2d. The United States can assert no right, for its right depends also upon a sentence of condemnation, which alone can divest the former title.

3d. The original proprietor is forbidden by this doctrine from asserting his title.

The only party in whom the law recognizes a title, is forbidden to assert it, and the government, and the sub-officers and crew of the capturing vessel, have no rights cognizable in a court. This property, therefore, on this doctrine, must remain in the hands of the present defendant, subject to no responsibility.

The only mode of avoiding these absurd consequences is to enforce the law as above stated. 2 Wheat. Appx. 9. When a ship is captured, it is the duty of the captors to send her into some convenient port for adjudication. Citing the Huldah; and other cases; the Mentor, 1 Rob. 151; the Susanna, 6 Rob. 48.

In the Madonna del Burso, (4 Rob. 171,) Sir W. Scott says: — "However justifiable the seizure may have been, the first obligation which the seizor has to discharge, is that of accounting why he did not institute proceedings against the vessel and cargo immediately; and unless he can exculpate himself with respect to delay in this matter, he is guilty of no inconsiderable breach of duty. It would be highly injurious to the commerce of other countries, and disgraceful to the jurisprudence of this, if any persons, commissioned or non-commissioned, could lay their hands upon valuable ships and cargoes in our harbors, and keep their hands upon them without bringing such an act to judicial notice in any manner for the space of three or four months."

"A belligerent nation which is in the exercise of these rights of war, is bound to find tribunals for the regulation of them; tribunals clear in their authority, as well as pure in their administration; and if from causes of private internal policy, arising out of the peculiar relation of the component parts of the belligerent State, difficulties arise, the neutral is not to be prejudiced on that account; he has a right to speedy and unobstructed justice, and has nothing to do with such difficulties created by questions of domestic constitution." Id. 177.

This view furnishes an answer to the suggestion of the necessity of creating and resorting to such a court as was erected in California. So, in page 147, will be found an equally decisive answer to the suggestion of counsel, that the master of the Admittance appeared before the Alcalde at Monterey. These libellants were not present, nor had the captain any authority to represent them; and he, as Sir W. Scott says, "only followed where he was led."

In the case of the St. Juan Baptista, (5 Rob. 33,) the prize was brought into England on the 12th of August, and proceedings were instituted on the 12th September, and the court held that it was bound to require a satisfactory cause for this delay. "Grievous," says Sir W. Scott, "would be the injury to neutral trade, and highly disgraceful to the honor of our country, if captors could bring in ships at their own fancy, and detain them any length of time without bringing the matter to the cognizance of a court of justice. In the present instance this first and fundamental duty has not been performed." "Persons venturing to take out a commission of war must instruct themselves in their own duty, and if any inconvenience arises from their neglect, the neutral claimant is not to suffer." In the case at bar, no prize proceedings have to this day been instituted; this fundamental duty, as Sir W. Scott calls it, has been wholly neglected. The property has never been brought within the United States, — another fundamental duty. The papers and documents on board have never been transmitted to any District Court, a peremptory requisition of the law is thus disregarded. It is intimated they are in the possession of the Navy Department. How did the captors procure them from the pseudo court at Monterey, and under what authority are they lodged in the Navy Department? The property no longer remains specifically; it has been converted into money, and no prize court can now proceed to adjudication.

In the Wilhelmsberg, (5 Rob. 143,) the same learned judge, observing upon the duty of the captor to send his prize to some convenient port, says that "in that consideration the convenience of the claimant, in proceeding to adjudication, is (among)

one of the first things to which the attention of the captor ought to be addressed." " He considered that the port selected in that case was not such a port, a place where the captor cannot get advice, much less can the claimant learn in what manner to proceed, or where to resort for justice."

If such was the character of that port, what shall be said of Monterey, a place not within the jurisdiction of any court of the United States; a port of the very enemy with whom we were at war, occupied, it is true, so far as their guns could reach, by an American force; where no tribunal existed which could direct its process, or exercise jurisdiction; no judge responsible for the performance of judicial function; where the protecting arm and supervising power of the Circuit or Supreme Court could not reach; where no counsel could be found competent to give correct advice. How infinitely further from the shadow of right than in the case of the Wilhelmsberg, already cited, or that of the Lively, (1 Gall. 315,) where the court condemned the captor for carrying the property captured in the neighborhood of Machias River, to Salem. The Lively was a case in which the claimants had filed a libel for restitution, as here, and in which a monition to proceed to adjudication issued against the captors, who accordingly libelled the property as prize. It was not attempted there, as here, to bar the relief sought in the Instance Court by setting up a lawful cause for condemnation as prize of war, or a probable cause to justify the seizure. Before that learned court no such ground of defence would be offered or admitted. There it was the well-known law, that the Prize Court could only alone adjudicate upon these questions.

Had the captured property been brought within the jurisdiction of the District Court, having power to proceed as in a prize case, and such proceedings had been commenced, the claimant might have proceeded by petition in that court to compel the captors to proceed to adjudication. Such was the course in the case of the William, 4 Rob. 214. When, however, the property is beyond the jurisdiction of the Prize Court, so that no prize jurisdiction can be exercised, then a monition issues from the instance side of the court, proceeding personally against the captors, commanding them to perform the duty enjoined on them by law, or to restore the property.

It must be borne in mind, that in this case no claim is presented for vindictive damages; the captor is not sought to be molested for his acts of wrong, or for his omission to perform a duty. The simple demand is, that, having seized our property, having failed to perform the fundamental duty imposed on him by law, having failed to show his right to capture, having omitted to permit us to assert our rights and maintain our innocence

in the only court having jurisdiction to decide the question of prize, he shall restore the property specifically; or if he has put it out of his power by any means, of doing this, then that he shall respond in value. Our proceeding is more nearly assimilated to the common-law actions of trover or replevin, than of trespass. The issue presented is simply of a right to property. If the property belongs to libellants, they are entitled to a decree of restitution; if that property has been divested, and the right now belongs to the defendant, he is entitled to judgment.

This conclusion cannot be avoided by adopting a principle asserted by the learned counsel for the respondent, viz., that condemnation as prize is not necessary to vest the title to the property captured, in the captors. He asserts that a forfeiture attaches *in rem*, when the offence is committed, and the property is instantly divested.

(The counsel then proceeded to comment upon this position, and concluded as follows.)

If, in this proceeding, the question of prize cannot be raised, or decided; if the court cannot proceed to condemn, and therefore, will not permit defendant, collaterally and incidentally, to avail himself of such a ground of defence, as little ground is there for the analogous defence upon which the Circuit Court seems to have rested that portion of the decree from which we have appealed, viz., that the pleadings disclose a case of probable cause of capture which justified the seizure and bars this action.

This point, it is believed, was not argued in the court below, but was gratuitously taken by the learned judges themselves, the chief judge not sitting in the cause.

It is apprehended, that in deciding this to be a bar to the action, the whole principle of the law as to probable cause, has been lost sight of. Probable cause is recognized as a justifiable ground of seizure, either as prize *jure belli*, or for a statute forfeiture. In the first class of cases, where the capture has been made as prize of war, the general principles of the law of nations provides this defence; where made for an alleged forfeiture under a statute, such protection must be conferred by statute, or it is not available. But, whether in the one case or the other, these principles are believed to be incontrovertible and universal.

1. The question of probable cause belongs exclusively to the court which has jurisdiction to condemn or to decree forfeiture.

2. It can be adjudged in that court only in a proceeding to obtain condemnation.

3. Only in such court, after a decree refusing condemnation and directing restitution.

4. The only legal operation of a certificate of probable cause is to bar a recovery of damages for an unlawful seizure.

The general principles which govern cases of this character, are embodied in our statute book. 1 Stat. at Large, 696, 122. The 89th sect. of the act of March 2, 1799, provides for cases of seizures under the collection laws, and enacts that "when any prosecution shall be commenced on account of the seizure of any ship or vessel, goods, &c., and judgment shall be given for the claimant or claimants; if it shall appear to the court before whom such prosecution shall be tried, that there was a reasonable cause of seizure, the said court shall cause a proper certificate or entry to be made thereof, and in such case, the claimant or claimants shall not be entitled to costs, nor shall the person who made the seizure, or the prosecutor, be liable to action, suit, or judgment, on account of such seizure and prosecution." Similar provisions may be found in other statutes inflicting forfeitures.

The act of June 26, 1812, (2 Stat. at Large, 759, c. 107,) concerning letters of marque, prizes, and prize goods, in its 6th section, provides "that before breaking bulk of any vessel which shall be captured as aforesaid, or other disposal or conversion thereof, or of any article which shall be found on board the same, such captured vessel, goods, or effects, shall be brought into some port of the United States, and shall be proceeded against before a competent tribunal; and after condemnation and forfeiture thereof, shall belong to the owners and captors thereof, and be distributed as aforesaid; and in the case of all captured vessels, goods, and effects, which shall be brought within the jurisdiction of the United States, the District Courts of the United States shall have exclusive original jurisdiction thereof, as in civil cases of admiralty and maritime jurisdiction; and the said courts, or the courts being courts of the United States, into which said cases shall be removed, and in which they shall be finally decided, shall and may decree restitution in whole or in part, when the capture shall have been made without just cause; and, if made without probable cause, or otherwise unreasonably, may order and decree damages and costs to the party injured."

These provisions embody the correct doctrine of the law relating to probable cause; and it is confidently asserted that no case can be produced in which even a certificate of probable cause, given by a court exercising exclusive jurisdiction, was ever thought to present a bar to a claim for restitution of property.

The argument of the counsel for the respondent, viz., the competency of the court in California, is omitted.

Upon the question presented by the second demurrer, viz.,

" Can the respondent defend himself in this suit by the matters and things stated in his answer?" a part of the argument of the counsel was as follows. ·

It is contended, by the learned counsel for the libellants, that the respondent cannot defend himself in this suit by showing any " act or thing on the part of the captain or crew of the ship Admittance, or any act of omission or commission of any sort or kind as a justification of the said seizure of said ship or her cargo, as lawful prize of war, or which might amount to probable cause for said seizure, etc."

It is thought this position cannot be maintained; it indicates a fear upon the part of the libellants, themselves admitted wrong-doers, to meet the respondent upon fair ground, the merits of the case. They ask for heavy damages, and at the same time admit that they accrued by reason of their own illegal acts.

What is there in the nature of this suit that should exclude the defence set up by the respondent? What is the injury complained of? It is, as stated in the libel, that the respondent, " without any lawful cause or probable cause of suspicion," seized and took possession of the ship Admittance, her cargo, and papers, and that the same were not brought nor sent within the jurisdiction of any court of the United States for adjudication, and that the libellants " have been, for more than a twelve-month, deprived of the use, possession, management, and control of the said property," and that the same has been " illegally sold and disposed of." The remedy pursued, is a proceeding instituted to compel the respondent to bring in the property, and proceed to adjudication, or in default thereof, that restitution in value should be decreed against him. It is a very common proceeding in the admiralty courts, and by looking into its nature and object, it will be perceived that the defence contended for, is necessarily granted. It will be found that the mere failure of a captor to proceed to adjudication, is not enough to entitle a claimant to restitution in value, but that the court will look back to the original cause of seizure, and if the claimant has violated any law which rendered his property liable to condemnation, restitution in value will not be decreed.

Various authorities are cited to show that the distinction between the prize and instance side of the District Courts, as Courts of Admiralty, has an important bearing upon this question.

It is stated, in the argument of the learned counsel, that "this is a suit instituted on the instance side of the admiralty for an alleged marine trespass," and also, " that it is not a suit for damages." I would ask what is a decree of restitution in value, but a decree of damages for a marine trespass? And is the respondent, merely because the proceedings are instituted on the

instance side of the admiralty, to be ousted of his defence, and not to be permitted to show that no trespass was committed.

What is a tort of which a court of admiralty has jurisdiction? Vide Conkling's United States Admiralty, p. 21, where Judge Story enumerates the different injuries redressed by a court of admiralty. See also, p. 334, 336, note a. The passages referred to describe the various injuries for which legal redress can be obtained, and point out the particular remedies; and yet there is nothing like a claim for damages because the property was not condemned, but they refer to the legality or illegality of the seizure; and in the last reference it is said, "if no proceeding is instituted, as is sometimes the case when the captor himself has become convinced of the invalidity of the capture, or the captured property has been lost by recapture or otherwise, the injured party may, in such case, himself become the primary actor, by calling on the captor to proceed to adjudication, and at the same time invoking the justice of the court to award damages, if the capture shall be adjudged to have been tortious;" not because the captor had not proceeded to adjudication.

In Wheaton on Captures, p. 280, sect. 18, the same redress is pointed out. "If the captors omit or delay to proceed to the adjudication of the property, any person claiming an interest in the captured property may maintain a monition against them, citing them to proceed to adjudication, which, if they do not do, or show cause why the property should be condemned, it will be restored to the claimants proving an interest therein; and this process is often resorted to when the property is lost or destroyed through the fault or negligence of the captors, in order to obtain a compensation in damages for the unjust seizure and detention."

In 2 Wheaton's Rep. App. p. 11, it is said, "If the captors unjustifiably neglect to proceed to adjudication, the court will, in case of restitution, decree demurrage against them," and cites the Madonna del Burso, 4 Rob. 169; The Corier Maratimo, 1 Rob. 287; The Peacock, 4 Rob. 185; The Anna Catherina, 6 Rob. 10.

Hence, whenever a restitution in value is decreed, it is upon the ground that there would have been a restitution of the property valued, and no case cited by the learned counsel controverts this position.

(The counsel then proceeded to comment upon the following cases: The Lucy, 3 Rob. 208; The Huldah, 3 Rob. 235; The Madonna del Burso, 4 Rob. 169; The St. Juan Baptista, 5 Rob. 33; The Wilhelmsberg, 5 Rob. 143; The Lively, 1 Gallison, 315; The Felicity, 2 Dodson, 381; The Rover, 2 Gallison, 239.)

Various acts of Congress have been referred to to show that it is the duty of a captor to bring in captured property, and pro-

ceed to adjudication. This general principle, it has been before stated, is admitted. It is not contended, in behalf of respondent, that a captor may, at his pleasure, under any circumstances, disregard the injunctions of the law, omit to bring his prize into court, convert it into money, and retain it in his own hands. The maintenance of such principles is not necessary to his defence in this suit.

But I would ask, is a veil to be thrown over the conduct of the libellants or their agents? Is the fact to be kept out of view, that the master of the Admittance sailed from New Orleans with the intent to trade with the enemy, and did in fact trade with the enemy? Will this court aid an unworthy claimant? "It is a good moral and legal principle, that a man must come into a court of justice with clean hands, and that the law will not lend its aid to a person setting up a violation of law on the face of his claim." Wheaton on Captures, 225.

The Anna Maria, 2 Wheaton, 328. Chief Justice Marshall says: "To sustain the claim of the libellants, the first point to be established is the fairness of the voyage."

The Gran Para, 7 Wheaton, 483. "A claim founded on piracy, or any other act, which, in the general estimation of mankind, is held to be illegal or immoral, might, I presume, be rejected in any court on that ground alone." And is not the present claim founded on an illegal act? The demurrer admits the illegal act, and yet the claim is for restitution.

The Bello Corrunes, 6 Wheaton, 169. "But can a citizen of this country, who has violated its laws, ever be recognized in our courts as a legal claimant of the fruits of his own wrong?"

It will be perceived, by referring to the answer of the respondent, and the amendment to the answer, that the seizure may be justified on two grounds: first, a trading with the enemy; and, second, that it was the property of the enemy. The Rugen, 1 Wheaton, 74. It is important, in the view now about to be taken, to ascertain the national character of the libellants. The libel states they were neutrals, some of them subjects of the Queen of Spain, and the others subjects of France. This is denied by the answer, which avers that they were resident merchants of Mexico, conducting there a commercial establishment — a fact beyond dispute. "If a person has a residence in a hostile country, and conducts a commercial establishment there, notwithstanding his place of birth, he will be considered as an enemy in regard to his commercial operations." 1 Kent, 74, 75.

Then the libellants must be considered as belligerents, and this must be taken as admitted by the demurrer.

Was condemnation necessary to divest the libellants of the property?

Jecker et al. v. Montgomery.

In Gelston v. Hoyt, 3 Wheaton, it was decided that a forfeiture attached *in rem* at the moment the offence was committed, and the property was instantly divested, so that no action could be maintained for the subsequent seizure. This, it is said, was a case of a statute forfeiture, and has no analogy to the question under consideration; but it is submitted that it has an important bearing, inasmuch as it shows that whatever may be the subsequent conduct of a captor, an action cannot be maintained against him.

The Mars, 1 Gallison, 192.* In this case it will be found, that upon principles of common law the following propositions were discussed by Judge Story:

1. What is the interest or right which attaches to the government in forfeitures of property, before any act done to vindicate its claims?

2. What is the operation of such act, done to vindicate its claim, as to the offender and as to strangers?

And the conclusions he arrived at were —

1st. "That an absolute property vested in the United States when actual seizure was made."

2d. "That, as against the offender or his representatives, upon seizure, the title, by operation of law, relates back to the time of the offence, so as to avoid all mesne acts."

Then, upon the authority of this case, it is submitted, that the libellants were absolutely divested of their property upon the commission of the offence. A captor may destroy property. 1 Kent, 104. "Sometimes circumstances will not permit property captured at sea to be sent into port, and the captors in such cases may either destroy it, or permit the original owner to ransom it."

There are decisions to the effect that it requires a sentence of condemnation to change the property, but this applies to a neutral purchaser; as in the case of the Flad Oyen, (1 Rob. 117,) the substance of which decision was, that the owner could have restitution of his property from a neutral vendee, unless it had been condemned to the captors; and the reason of this is obvious, the neutral purchaser can only take that which his condition of neutrality permits him to take, and when he takes the property without condemnation from the captors, he occupies the position of a captor, which is inconsistent with his neutrality.

In Goss v. Withers, (2 Burr. 694,) Lord Mansfield says, "the property is not changed so as to bar the owner, in favor of a

---

* This case more particularly applies to the first ground of seizure, — "trading with the enemy."

vendee, or recaptor, till there has been a sentence of condemnation," intimating that it is changed without condemnation so as to bar the owner in a claim against the captor.

In 1 Kent, 101, it is said : " When a prize is taken at sea, it must be brought with due care into some convenient port for adjudication by a competent court; though, strictly speaking, as between the belligerent parties, the title passes and is vested when the capture is complete ; and " this question never arises but between the original owner and a neutral purchasing from the captor, and between the original owner and a re-captor."

The Adventure, 8 Cranch, 226. The Adventure was an English snip, seized by the French. The French captors made a donation of her to the crew of an American brig, who brought her into Norfolk, and claimed her as their property, acquired by the donation of the captors. Mr. Justice Johnson, in delivering the opinion of this court, says: " As between the belligerents, the capture undoubtedly produces a complete divestiture of property."

Admitting the principle supposed to be decided in the case of Price v. Noble, (4 Taunt. 123,) to be correct, that the property was not changed, because there was a *spes recuperandi*, it would not affect this case, the property having been brought *infra presidia*; and this may be also observed of the reference to 15 Vin. Abr. 51.

In the case of Camden v. Home, (6 Bro. P. C., 2 H. B.) the statute expressly vested the right in the captor after adjudication.

On these grounds it is submitted that condemnation was not necessary to divest the libellants of their property.

It is urged, in behalf of the libellants, that the government has asserted and can assert no rights here ; and if the defence is held available, it will place the " whole proceeds of this valuable cargo in the pocket of the respondent." What will or will not go into the pocket of the respondent, is a question not pertinent to the issues presented by the record ; but, it may be observed, that one half of the property in question, if lawful prize, belongs to the government; and upon the institution of this suit it asserted its rights so far as to employ counsel for the respondent.

By directions from the Navy Department, the proceeds of the sale of the ship and cargo were not distributed, but were sent into the United States, and placed in the treasury, where they now are, a circumstance which, it is believed, was known to the libellants ; and if they had thought proper to institute proceedings calling on the respondent to bring in the proceeds, they would have been forthcoming. The property has not been

"illegally or unjustifiably" converted, and, under the authority of the case of the Eole, (6 Rob. 224,) the proceeds are entitled to the privilege of prize property, and subject to the judgment of the court.

There is not a single circumstance, connected with this seizure, which can justify the imputation of misconduct. For reasons, which were conclusive in the mind of the respondent, he directed an officer to board and seize the Admittance. Upon the examination of her papers, it was at once seen that his reasons were well founded. The deceptive clearance, the erasures upon the bills of lading, the false entries in the log-book, the position of the ship on the coast of Mexico when she had cleared for Honolulu, were all circumstances indicating guilt. The subsequent testimony of the mate of the Admittance, that she had been sailing under false colors, answering private signals given from various points on the shore, receiving and answering written communications, her name on the stern concealed with canvas, the captain expressly avowing his intention of discharging his cargo at some port or place in possession of the enemy, and expressing a fear of falling in with an American man-of-war, affords the most conclusive evidence, that to have acted otherwise, the respondent would have been justly chargeable with a violation of his duty.

The condition of the ship, the want of stores, and his inability to furnish a prize crew, rendered it impossible to send her into any port of the United States, a state of things which had been contemplated by the instructions he received from his superior in command. He, therefore, proceeded to Monterey, and libelled the ship in the aforementioned court, which he had every reason to believe was a competent tribunal. The papers of the Admittance were there filed, and finally transmitted to the Navy Department, copies of which have been furnished the counsel of the libellants, and they are referred to and made a part of the respondent's answer.

There are two grounds, either of which, if it is competent for this court to consider, as the case is presented, must be conclusive against the libellants.

1st. What authority have the libellants to appear and claim an interest in the cargo? They were belligerents. The libel states that the cargo " was purchased by order of Messrs. Rubio, Brothers & Co., subjects of the Queen of Spain; the bills of lading were made out in their name, and were subsequently indorsed and transferred to the libellants;" that " the cargo was shipped at New Orleans in October, 1846." The answer avers that Messrs. Rubio, Brothers & Co. were also belligerents, a fact which cannot be denied. Then, how could they acquire pro-

perty by a purchase at New Orleans during the war? Was a right of property ever vested in either Rubio, Brothers & Co. or the libellants? Vide 1 Kent, 67, and the authorities there cited.

2d. Does not the intervention of peace bar the claimants? " Captured property remains in the same condition in which the treaty finds it, and it is tacitly conceded to the possessor. The intervention of peace cures all defects of title." 1 Kent, ch. 5, 111; ch. 8, 169.

The schooner Sophie, 6 Rob. 138. Sir William Scott says, " I am of opinion that the title of the former owner is completely barred by the intervention of peace, which has the effect of quieting all titles of possession arising from the war," and this was decided in a cause where the captured vessel claimed had not been condemned.

Upon these views, the respondent prays that so much of the judgment of the Circuit Court as sustains the first demurrer may be reversed, and that the residue of said judgment may be affirmed with costs.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case arises upon the capture of the ship Admittance during the late war with Mexico, by the United States sloop of war Portsmouth, commanded by Captain Montgomery.

The Admittance was an American vessel, and after war was declared, sailed from New Orleans with a valuable cargo, shipped at that place. She cleared out for Honolulu, in the Sandwich Islands; and was found by the Portsmouth at Saint Jose, on the coast of California, trading, as it is alleged, with the enemy.

Before this capture was made, a prize court had been established at Monterey, in California, by the military officer, exercising the functions of governor of that province, which had been taken possession of by the American forces. A chaplain, belonging to one of the ships of war on that station, was appointed Alcalde of Monterey, and authorized to exercise admiralty jurisdiction in cases of capture. The court was established at the request of Commodore Biddle, the naval commander on that station, and sanctioned by the President of the United States, upon the ground that prize crews could not be spared from the squadron to bring captured vessels into a port of the United States. And the officers of the squadron were ordered to carry their prizes to Monterey, and libel them for condemnation in the court above mentioned, instead of sending them to the United States.

In pursuance of this order the Admittance was carried to Monterey, and condemned by the court as lawful prize; and the vessel and cargo sold under this sentence. The seizure at Saint

Jose was made on the 7th of April, 1847, and the ship and cargo condemned on the 1st of June, in the same year.

The order of the President, authorizing the establishment of the court, required that the proceeds, arising from the sale of prizes, should not be distributed, until a copy of the record was sent to the Navy Department, and orders in relation to the prize-money received from the secretary. No order appears to have been given in this case, and it would be presumed, from the pleadings, that it is still in the custody of the commander of the Portsmouth. It has, however, been stated in the argument, and we understand is admitted, that the money was sent to the United States, and placed in the custody of the Treasury Department, where it still remains. But it is not material in this case to inquire, whether it is still in possession of Captain Montgomery, or in the custody of the Secretary of the Treasury. It could not, in either case, affect the decision. This is the case as it appears on the record, and admissions in the argument. It comes before the court on the following pleadings.

The claimants, on the 6th of June, 1848, filed a libel in the Admiralty Court for the District of Columbia, against the captor, stating that they were the owners of the cargo of the Admittance; that they were subjects of Spain, and neutrals in the war between this country and Mexico; that the Admittance sailed on a lawful voyage; that the vessel and cargo were seized at Saint Jose by Captain Montgomery as prize of war, without any lawful or probable cause; that the vessel and cargo were not brought to the United States, nor proceeded against as prize of war in any court having jurisdiction to adjudicate upon the lawfulness of the capture, but were unlawfully sold and disposed of by Captain Montgomery, who thereby had put it out of his power to proceed to any lawful adjudication upon the legality of the capture, and had thus made himself a trespasser *ab initio,* independently of any lawful or probable cause for the original seizure. They pray, therefore, that he may be compelled to bring the cargo within the jurisdiction of the court, or of some other court of the United States, and institute proceedings against the property, and show that there was lawful or probable cause for the seizure, and have the same adjudicated upon by some court of the United States having full jurisdiction in the matter; and that restitution of the goods or the value thereof may be awarded to the libellants, with damages for the unlawful seizure.

Captain Montgomery appeared and answered, and admitted that, as commander of the United States ship Portsmouth, he seized and took the Admittance at Saint Jose as lawful prize; and justifies the seizure upon the ground that she sailed from

New Orleans with the design of trading with the enemy; that she did in fact hold illegal intercourse with them, and discharged a part of her cargo at Saint Jose. And the respondent exhibits with his answer, and as a part of it, sundry papers received from Peter Peterson, the master of the Admittance, together with her log-book and the deposition of her mate.

The respondent further states that it was impossible for him, consistently with the public interests, to send the Admittance to any port of the United States; and that he carried her before the prize court hereinbefore mentioned, at Monterey, where she was condemned with her cargo as lawful prize; and exhibits the proceedings of that court as a part of his answer, and relies on this condemnation as a bar to the present proceedings on behalf of the claimants.

To this answer the libellants put in two demurrers.

1. To so much of the answer as relies upon the condemnation at Monterey as a bar.

2. To so much of the answer as relies upon the acts of the captain and crew of the Admittance as a justification for the seizure of the ship or cargo as lawful prize of war, or furnishing probable cause for seizure; and, as the ground for this demurrer, avers that the Admiralty Court for the District of Columbia had no jurisdiction to adjudicate upon the question of prizes or probable cause of seizure, as the property was not within its control, and could not be brought within it in consequence of the sale in California. The respondent joined in these demurrers.

After these issues in law had been joined, the respondent, by leave of the court, amended his answer, averring in the amendment that the libellants, at the time of the shipment at New Orleans and at the time of the seizure, were domiciled in Mexico and conducting a commercial establishment in that country; and also, that the libellants were the owners of only a small portion of the cargo. But there is no replication to this amendment, nor is it embraced in the issues of law made by the demurrers. The omission to dispose of it, however, forms no objection to this appeal, as the judgment of the Circuit Court was final, and disposed of the whole case, independently of these new allegations.

In this state of the pleadings, a decree was entered in the District Court sustaining both of the demurrers, and directing the respondent to bring the cargo within the jurisdiction of some District Court of the United States, and institute proceedings against it as prize of war, on or before the day mentioned in the decree; and that in default thereof the libellants should recover its value.

This decree was entered *pro formâ* in order to bring the case

before the Circuit Court, to which the respondent accordingly appealed.    And upon the argument in the last-mentioned court, the first demurrer was sustained, and the decree of the District Court in that respect affirmed; but so much of the decree as sustained the demurrer to the answer of the respondent, averring sufficient probable cause for the seizure of the cargo, was reversed, and a final decree upon that ground rendered against the libellants.

From this decree both parties have appealed to this court.

In relation to the proceedings in the court at Monterey, which is the subject of the first demurrer, the decision of the Circuit Court is correct.

All captures *jure belli* are for the benefit of the sovereign under whose authority they are made; and the validity of the seizure and the question of prize or no prize can be determined in his own courts only, upon which he has conferred jurisdiction to try the question.    And under the Constitution of the United States the judicial power of the general government is vested in one Supreme Court, and in such inferior courts as Congress shall from time to time ordain and establish.    Every court of the United States, therefore, must derive its jurisdiction and judicial authority from the Constitution or the laws of the United States.    And neither the President nor any military officer can establish a court in a conquered country, and authorize it to decide upon the rights of the United States, or of individuals in prize cases, nor to administer the laws of nations.

The courts, established or sanctioned in Mexico during the war by the commanders of the American forces, were nothing more than the agents of the military power, to assist it in preserving order in the conquered territory, and to protect the inhabitants in their persons and property while it was occupied by the American arms.    They were subject to the military power, and their decisions under its control, whenever the commanding officer thought proper to interfere.    They were not courts of the United States, and had no right to adjudicate upon a question of prize or no prize.    And the sentence of condemnation in the court at Monterey is a nullity, and can have no effect upon the rights of any party.

The second demurrer denies the authority of the District Court to adjudicate, because the property had not been brought within its jurisdiction.    But that proposition cannot be maintained; and a prize court, when a proper case is made for its interposition, will proceed to adjudicate and condemn the captured property or award restitution, although it is not actually in the control of the court.    It may always proceed *in rem* whenever the prize or proceeds of the prize can be traced to the hands of any person whatever.

As a general rule, it is the duty of the captor to bring it within the jurisdiction of a prize court of the nation to which he belongs, and to institute proceedings to have it condemned. This is required by the act of Congress in cases of capture by ships of war of the United States; and this act merely enforces the performance of a duty imposed upon the captor by the law of nations, which in all civilized countries secures to the captured a trial in a court of competent jurisdiction before he can finally be deprived of his property.

But there are cases where, from existing circumstances, the captor may be excused from the performance of this duty, and may sell or otherwise dispose of the property before condemnation. And where the commander of a national ship cannot, without weakening inconveniently the force under his command, spare a sufficient prize crew to man the captured vessel; or where the orders of his government prohibit him from doing so, he may lawfully sell or otherwise dispose of the captured property in a foreign county; and may afterwards proceed to adjudication in a court of the United States. 4 Cr. 293; 7 Id. 423; 2 Gall. 368; 2 Wheat. App. 11, 16; 1 Kent's Com. 359; 6 Rob. 138, 194, 229, 257.

But if no sufficient cause is shown to justify the sale, and the conduct of the captor has been unjust and oppressive, the court may refuse to adjudicate upon the validity of the capture, and award restitution and damages against the captor, although the seizure as prize was originally lawful, or made upon probable cause.

And the same rule prevails where the sale was justifiable, and the captor has delayed, for an unreasonable time, to institute proceedings to condemn it. Upon a libel filed by the captured, as for a marine trespass, the court will refuse to award a monition to proceed to adjudication on the question of prize or no prize, but will treat the captor as a wrongdoer from the beginning.

But, in the case before us, sufficient cause for capture and condemnation is stated in the answer; and the reason assigned therein is a full justification for not sending the Admittance and her cargo to the United States. And as to the delay, he had reasonable ground for believing that no further proceedings were necessary after the condemnation at Monterey. The court had been constituted with the sanction of the executive department of the government, under whose orders he was acting; and it had condemned the vessel and cargo as prize, and ordered them to be sold. And if, as seems to be conceded in the argument, the proceeds were paid over to the government to await its further orders, and still remain in its hands, certainly no laches or neglect of duty in any respect can be imputed to the respondent.

Inasmuch, therefore, as the answer alleges a sufficient cause for selling the property before condemnation, and also for not proceeding against it in a court of competent jurisdiction, the respondent has forfeited none of the rights which he acquired by the capture. And, as the District Court had jurisdiction, the second demurrer ought to have been overruled, and an order passed directing Captain Montgomery to institute proceedings by a certain day to condemn the property, (giving him reasonable time,) and that, upon his failure to comply with the order, the court should proceed on the libel filed against him for a marine trespass, and award such damages as the libellants might show themselves entitled to demand.

The necessity of proceeding to condemnation as prize, does not arise from any distinction between the Instance Court of Admimiralty and the Prize Court. In England, they are different courts; and, although the jurisdiction of each of them is always exercised by the same person, yet he holds the offices by different commissions. But, under the Constitution of the United States, the Instance Court of Admiralty and the Prize Court of Admiralty are the same court, acting under one commission. Still, however, the property cannot be condemned as prize, upon this libel; nor would its dismissal be equivalent to a condemnation, nor recognized as such in foreign courts. The libellants allege that the goods were neutral, and not liable to capture; and their right to them cannot be divested until there is a sentence of condemnation against them as prize of war. And, as that sentence cannot be pronounced in the present form of the proceeding, it becomes necessary to proceed in the prize jurisdiction of the court, where the property may be condemned or acquitted by the sentence of the court, and the whole controversy be finally settled. 4 Cr. 241; Rose *v.* Himely; 2 Wheat. App. 41, 42; 1 Kent's Com. 101, 102; 6 Rob. 48; 3 Id. 192; 2 Gall. 368; 2 Id. 240.

But the Circuit Court erred in giving final judgment against the libellants, upon the ground that the answer showed probable grounds for the seizure. The question of probable cause is not presented in the present stage of the proceedings, and cannot arise until the validity of the capture is determined. If it turn out, upon the final hearing upon the question of prize or no prize, that the vessel and cargo were liable to capture and condemnation, it would necessarily follow that there was not only probable cause, but good and sufficient cause, for the seizure. And if, on the contrary, it should be found that they were not liable to capture, as prize of war, the libellants would be entitled to restitution, or the value in damages, although the strongest probabilities appeared against them at the time of the seizure. Probable cause or not becomes material only where restitution is awarded, and

the libellants claim additional damages, for the injury and expenses sustained from the seizure and detention. It applies only to these additional damages; and, however strong the grounds of suspicion may have been, it is no bar to restitution, if the claimant can show that the goods which he claims belonged to him, were neutral, and that nothing had been done that subjected them to capture and condemnation.

The judgment of the Circuit Court must therefore be reversed, and a mandate awarded, directing the case to be remanded to the District Court, to be there proceeded in, according to the rules and principles stated in this opinion.

The appeal on the part of the respondent is dismissed. The decision upon the matter in controversy was in his favor, and the question of law decided against him on the first demurrer, was open for argument upon the appeal of the libellants. There was no ground, therefore, for this appeal.

### Order in Jecker et al. v. Montgomery.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is, hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, for further proceedings to be had therein, in conformity to the opinion of this court.

### Order in Montgomery v. Jecker et al.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is now here ordered, adjudged, and decreed, by this court, that this cause be, and the same is hereby, dismissed, with costs.