THE STATE OF GEORGIA, Comp't, vs JAMES ATKINS, Col., etc. Def't.

1. A State may sue in a Circuit Court. Where a State is plaintiff the jurisdiction of the Supreme Court is not exclusive.
2. A Circuit Court, as a Court of Equity, may, by injunction, prevent a Revenue officer from collecting an assessment of tax not warranted by law.
3. The term "Corporation," as used in the Acts of Congress touching internal revenue, does not include a State; consequently, the income of the State of Georgia from the Western & Atlantic Railroad, property owned, controlled and managed by that State, has not been made, by law, a subject of taxation

In Equity. In the District Court for the Northern District. Application for injunction. Decided by Judge ERSKINE, 1866.

ERSKINE, J.—This is a bill in chancery, filed in this Court by the State of Georgia, against James Atkins, the defendant, collector of the fourth collection district of this State, under the Internal Revenue laws of the United States, praying that a writ of injunction may be granted to restrain the defendant from further proceeding in the collection of the sum of six thousand and four dollars and fifty-six cents, claimed to be due to the United States, under the 103d section of said laws, by the Western and Atlantic Railroad, and which railroad, the bill alleges, is the property of the State of Georgia exclusively, and that the entire nett income of this railroad forms a part of the revenue of the State, and is applied to the support of its government; and that the Superintendent is the mere agent of the State, and has no authority over the road or its income which is not specifically given to him by the Act of the State. The following portion of the bill, showing its general scope and object, may be cited at length: "And your orator further complains, and says, heretofore, on the tenth day of May, eighteen hundred and sixty six, the said James Atkins, Collector of the Internal Revenue of the United States, as aforesaid, gave notice to Campbell Wallace, the Superintendent of said railroad, that he, the said Superintendent, should pay to him, the said Collector, the sum of

six thousand and four dollars and fifty-six cents, (6,004 56,) the said sum being demanded as revenue tax of the United States on six hundred and forty-thousand one hundred and eighty-two dollars and forty-nine cents, gross earnings of said road for five months and two days, to the twenty-eighth day of February, eighteen hundred and sixty-six; and that should he, the said Superintendent, fail to make said payment by the twentieth day of May following, that he, the said Collector, would issue and have levied upon said railroad and its property, a distress warrant for said amount with ten per cent. added thereto."

The defendant demurred to the whole bill. This admits all the facts in the bill that are well pleaded.

The several questions which arose and were involved in the case were argued, by Messrs. Law and Jackson for the complainant, and by Mr. Fitch, United States District Attorney, on behalf of Mr. Atkins, the Collector.

From the view which I take of this suit, it will not be necessary to pass upon more than two of the questions discussed.

The first matter for inquiry is that of jurisdiction. The District Court of the United States for the Northern District of Georgia has—by the Act of Congress approved August 11th, 1848, 9 Statutes at Large, 280—annexed to it the powers of a Circuit Court. The Circuit Courts of the United States are courts of special and limited jurisdiction, deriving all their powers from the Constitution and the Acts of Congress.

I will briefly endeavor to ascertain whether this Court has jurisdiction of the parties.

In the case of *The State of Pennsylvania* v. *The Wheeling & Belmont Bridge Co.*, 13 How. 516, it was asserted in explicit language, by Mr. Justice McLEAN, who delivered the opinion of the Court, and also by Mr. Chief Justice TANEY, in his dissenting opinion, that the suit might have been instituted in the Circuit Court for the Western District of Pennsylvania, instead of originally presenting it to the

Supreme Court.   And as to the controversy.—The first part of the second section of the Act of March 2d, 1833, provides, "That the jurisdiction of the Circuit Courts of the United States shall extend to ALL cases in law and equity, arising under the revenue laws of the United States, for which other provisions are not already made by law." It will be observed that the jurisdiction here conferred by Congress does not depend upon the amount in dispute, or upon the citizenship of the parties.

The case of *Cutting et. al.* vs. *Shook*, Assessor, and *Gilbert*, Collector, of the 32d collection district of the city of New York, was a suit in chancery, instituted by the complainants in the Circuit Court of the United States for the Southern District of New York, for themselves, as well as all others in interest, who might come in, etc., against the defendants, to enjoin the assessment and collection of a tax claimed by these officers to be due to the United States under the 99th section of the National Internal Revenue laws, for bonds, stocks, etc., bought and sold by complainants, as licensed brokers and bankers.   Because, among other things, of the joinder of improper parties, the injunction was denied by the Court, and the parties left to their remedy at law.   But Mr. Justice NELSON, in delivering the opinion, said: "The second section of the Act of Congress, of March 2, 1833, known as the *Force Act*, confers jurisdiction in express terms, and which has been applied to this Act by its fiftieth section.   And jurisdiction had previously, and has since, been upheld and exercised upon general principles of equity jurisprudence.   (9 Wh., 739, 903; 16 How., 369; 18 *ib*, 331; 1 Black, 436.)"  Pamph.—containing argument of *Mr. Courtney*, United States District Attorney, in behalf of the defendants, and the decision of Judge NELSON—p. 27, New York, 1865.

The preceding extract is a direct authority on the question under immediate consideration; and, for myself, I entertain no doubt whatever of the jurisdiction or power of this Court, if the tax sought to be collected is illegal—unwar-

ranted by the Act of Congress—to interpose, by writ of injunction, and arrest the threatened invasion of the property of the complainant.

One other question only, need be the subject of examination, and that is, whether, under the Internal Revenue laws, it was the intention of Congress that a duty or tax should be collected out of property owned, controlled and managed solely by a State : for it is admitted in the pleadings that the Western & Atlantic Railroad is the property of the State of Georgia exclusively, and that the nett income arising from the road is revenue applied to the support of the government of the State.  Section 103 of the Act of Congress of June 30, 1864, as amended by that of March 3, 1865, declares "that every person, firm, company, or corporation, owning or possessing, or having the care, or management of any railroad, canal, steamboat, ship," etc., " engaged, or employed in the business of transporting passengers, or property for hire, or in transporting the mails of the United States,  *  *  *  *  shall be subject to and pay a duty of two and one-half per centum upon the gross receipts of such railroad, canal, steamboat, ship," etc.   The question narrowed to a point is this : Does the word or term " corporation," for the purposes of this Act, and as herein used, include the term "State ?"   The United States are formed of a number of States, or Commonwealths, united together, and these constitute one General Government.   The State of Georgia is an integral and indissoluble part of the United States; but it is nevertheless, in the meaning of public law, a State.   When the term " corporation " is applied to a Nation or a State, it is employed in its most extensive signification; and thus used, the United States, and the several States, or Commonwealths, composing the Union, may be termed " corporations."   But when the term " corporation " is directed or refers to those artificial persons—bodies corporate or politic—instituted for the promotion and advancement of religion, learning or commerce, and for various other objects—public or private—where charity, industry,

skill, and speculation, can be freely and advantageously employed, and which owe their existence, name, powers, and duration to a government, it is used in its ordinary, and—to the common understanding—explicit sense.

Is the former or the latter application of the term the fair and legitimate one intended by the Act?

Now, in order to arrive at the intention of the law-giver, the whole and every part of the statute should be considered in determining the meaning of any of its parts; taking the words to be understood in that sense in which they are generally used by those for whom the law was intended, and discarding all subtle and strained construction for the purpose of limiting or extending their operation or import.   In the case of *Martin* v. *Hunter's* Lessee, 1 Wheat., 326, Mr. Justice STORY, in delivering the opinion of the Court, said that "words are to be taken in their natural and obvious sense, and not in a sense unreasonably restricted or enlarged." And in *Dunn* v. *Reid*, 10 Peters, 524, it was remarked by Mr. Justice McLEAN, in pronouncing the decision of the Court, that "cases may be found where courts have construed a statute most liberally to effectuate the remedy, but where the language of the act is explicit, there is great danger in departing from the words used, to give an effect to the law which may be supposed to have been designed by the Legislature."   I am of the opinion that Congress intended the term "corporation," as used in this Act, to be understood in its general, obvious and natural meaning; and, therefore, it does not include the term "State."   And, so far as my limited researches go, I am unable to discover a single case in the Supreme Court, or in any of the Circuit or District Courts of the United States, wherein it has been decided that the term "corporation"—body corporate or politic —when used in a statute, includes a "State," or where the one term is used as a synonym for the other.

It is therefore ordered that the demurrer be overruled; and that the writ of injunction issue in accordance with the prayer of the complainant, upon giving bond in the sum of thirty thousand dollars.