**In re OSTLIND MFG. CO.**
No. B–19519.

District Court, D. Oregon.
June 14, 1937.

Murphy & Skipworth, of Marshfield, Or., for trustee.

L. A. Liljeqvist, of Marshfield, Or., for Ostlind Sales Co.

Carey, Hart, Spencer & McCulloch and Philip Chipman, all of Portland, Or., for purchaser.

JAMES ALGER FEE, District Judge.

On October 24, 1934, a petition for the reorganization of the Ostlind Manufacturing Company was filed by the debtor, and after proper notice to all parties concerned, an order was entered, confirming the plan under section 77B of the acts relating to bankruptcies (11 U.S.C.A. § 207). Upon petition of the debtor on February 11, 1936, an order was issued to show cause why the order confirming reorganization should not be vacated and an order entered, appointing a trustee to take possession and control of the debtor's assets and to sell the same free and clear of all liens and encumbrances except taxes and to impress the proceeds thereof with the liens and claims of creditors, bondholders, and other persons in accordance with their priorities. Thereafter, notice was sent to all parties interested, and the court appointed a trustee upon March 23, 1936, directed him to send notice of appointment to all parties interested and proceed to sell all the assets of the estate. Subsequently, an order was entered, vacating the order confirming the reorganization. Some months afterward, when the proof of mailing of notices had been made, an order was entered, declaring the company insolvent, and directing immediate sale. No notice was sent of the offer which was accepted, but after sale was made, an order was entered, authorizing the execution and delivery of conveyances to the property. This order was subsequently modified by an order dated July 29, 1936, directing conveyance to be made to the parent corporation of purchaser. The purchase price was paid.

The final account of the trustee was then filed. Thereupon, the court directed that notice of a final hearing be published for three weeks. This matter was referred by order of court to the Honorable Estes Snedecor, who, though recognizing the irregularities, has recommended confirmation of the final report and distribution in accordance therewith.

All the parties interested were here before the court for the purpose of reorganization of the corporation. Ninety-five per cent. of all classes of creditors, bondholders, and stockholders joined in the plan for reorganization, the consummation of which failed, and rendered liquidation inevitable on account of the insolvency of the company. Furthermore, each party interested was given fair notice of every step taken throughout the entire proceeding, except the terms of the particular sale, and acquiesced therein. From initiation until now, each move has been characterized by good faith upon the part of the debtor. Distribution of the proceeds of sale has been urged by every one who appeared at the hearing. No one has objected. An order of this court sanctioned each move. There is no suggestion that chicanery or unfair dealing character-

# 838

ized the sale. There is no intimation that a higher price could be obtained; in fact, it is improbable, on account of the peculiar situation of the purchaser, that any would bid more. Great harm and loss would accrue to the various interests if the court were to set this sale aside and order another. All the equities are therefore massed on the side of confirmation. If the court had jurisdiction, this concentration makes the affirmance of the proceedings, however irregular they may have been, imperative.

■ But the vital element of jurisdiction cannot be conferred by consent or acquiescence.[1] If there is no jurisdiction, there can be collateral attack.[2] If there is jurisdiction, there can be no collateral attack.[3] In this case, no attack at all has been made, but the possibility must be considered, and the court must satisfy itself of its authority to act.

■ "Jurisdiction" is the power to hear and determine.[4] Such jurisdiction can be acquired in a lower federal court only by virtue of a statute.[5] But the instant proceeding was instituted by a petition for corporate reorganization, which is a proceeding in bankruptcy.[6] In that court, jurisdiction adheres in the property, and the failure of interested individuals to have notice or appear does not destroy the essential power to hear and determine.[7] The petition in this cause was voluntary, and thus the property was surrendered by action of the owner to the bankruptcy tribunal.[8] Such a court, although its field of action is limited, is accorded general jurisdiction within the lines of demarkation.[9]

■ This court, after reorganization plans failed, directed liquidation of the properties. Such action was permitted by the acts of Congress if the debtor has been found insolvent.[10] The primary order did not, it is true, recite insolvency, but the fact of insolvency at the time the order was entered was unquestioned, and the subsequent order recites it. Thus, the condition precedent to liquidation was apparent in fact and declared in the record. In any event, jurisdiction had already founded in the bankruptcy court since an order of liquidation is only a phase of the proceeding originally initiated. In a collateral proceeding, the jurisdiction exercised by a lower federal court cannot be attacked where the record does not affirmatively show its absence.[11]

■ The fundamental purpose of the acts relating to bankruptcies is to conserve the properties for the benefit of debtor and creditors alike [12] or to reduce the assets to cash for distribution among the creditors.[13] All the specific directions of these laws, although mandatory in form, are subservient to these major purposes. The courts have authority to deal comprehensively with the real and personal property of the bankrupt, so long as such purposes are carried out.[14] Within the scope of these statutes the court may appoint or supervise the appointment of various agents to conserve or liquidate the estate,[15] order sales of the property,[16] direct the sale of the property free and clear of liens,[17] require a sale without notice of property, where the expense of keeping it or the nature thereof is such that the value is ephemeral,[18] and in general, to do all things

[1] Chicago, Burlington & Quincy Railway Co. v. Willard, 220 U.S. 413, 427, 31 S.Ct. 460, 55 L.Ed. 521; Iowa Lillooet Gold Min. Co. v. Bliss (C.C.) 144 F. 446, 449.

[2] Guaranty Trust Co. v. Green Cove Railroad Co., 139 U.S. 137, 147, 11 S.Ct. 512, 35 L.Ed. 116.

[3] Voorhees v. United States Bank, 35 U.S.(10 Pet.) 449, 9 L.Ed. 490; Gunn v. Plant, 94 U.S. 664, 669, 24 L.Ed. 304.

[4] Thompson v. Terminal Shares (C.C.A.8) 89 F.(2d) 652, 654.

[5] See Jecker v. Montgomery, 54 U.S. (13 How.) 498, 515, 14 L.Ed. 240.

[6] Grand Boulevard Investment Co. v. Strauss (C.C.A.8) 78 F.(2d) 180, 182; See Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 667, 675, 55 S.Ct. 595, 601, 605, 79 L.Ed. 1110.

[7] Hanover National Bank v. Moyses, 186 U.S. 181, 192, 22 S.Ct. 857, 46 L. Ed. 1113.

[8] 11 U.S.C.A. § 207(a).

[9] Edelstein v. United States (C.C.A.8) 149 F. 636, 638, 9 L.R.A.(N.S.) 236.

[10] 11 U.S.C.A. § 207(c) (8).

[11] Dowell v. Applegate, 152 U.S. 327, 336–340, 14 S.Ct. 611, 38 L.Ed. 463.

[12] Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., supra.

[13] West Texas Construction Co. v. Nelson (C.C.A.5) 77 F.(2d) 754, 755.

[14] Robertson v. Howard, 229 U.S. 254, 263, 264, 33 S.Ct. 854, 57 L.Ed. 1174.

[15] 11 U.S.C.A. § 11(3) and (17).

[16] 11 U.S.C.A. § 11(7).

[17] Van Huffel v. Harkelrode, 284 U.S. 225, 227, 228, 52 S.Ct. 115, 116, 76 L. Ed. 256, 78 A.L.R. 453.

[18] In re Rosenbaum Grain Corporation (C.C.A.7) 83 F.(2d) 391, 393, 394; In re Theiberg (D.C.) 280 F. 408.

to protect the property or its value, and to distribute the proceeds.[19] Even if such acts are done in an irregular manner, there can be no collateral attack if the property was under the authority of the court, so long as the action was taken in accordance with the major purposes of the legislation.[20]

Owing to the ambiguities in the language of the statute, liquidation in this case proceeded in conformity to an equitable receivership rather than in accordance to the acts relating to bankruptcies.[21] This procedure is now disapproved by this court.[22] Although each step in this proceeding was taken based on an order, the practice was improper. As a result, the trustee was not elected by the creditors as required by mandatory provisions of the statute, but was appointed by the court. Under the terms of the ordinary bankruptcy statute, adopted by reference for proceedings in liquidation under 77B (11 U.S.C.A. § 207), the court is not given power initially to designate a trustee.[23] A condition precedent to such action is the failure of the creditors to act. In this case, specific notice was given that the designation of the trustee would be made by the court and there was no objection.

A sale of the property of the bankrupt estate was made, with notice to the interested parties that the trustee would be directed to so proceed. But no notice was given to the terms of the particular sale. No appraisement was had. The property of the estate was perishable in the sense that the upkeep was so expensive that if long delay had ensued, the value would have been lost. There were numerous other technical errors of minor consequence, resulting from a failure to follow the mandatory provisions of the applicable law.

But it may be objected that since the provisions of the statute are mandatory, violation thereof removes the foundation for the orders. But jurisdiction once established is not so avoided. This court in each instance determined that ordinary equity procedure was to be followed rather than that laid down in the statute. But in no instance did it sanction an act beyond the power of equity nor beyond the scope of the statute. These decisions were, it now appears, erroneous.

But where a court has jurisdiction, it is not obliged to render correct decisions. It has the authority to hear and determine. If within the scope of power and founded in jurisdiction, the decision, whether right or wrong, is a judicial act and a finality.[24] As such, it is not subject to collateral attack.[25]

Owing to the fact, however, that erroneous decisions were rendered, the principle that a court could set aside its own determinations during the term was early developed, and thereafter procedure for modification or reversal by review in another court was established. These are forms of direct attack as distinguished from collateral. The mere fact that a determination is subject to direct attack does not render it less conclusive, so long as it stands.

It is thus apparent that in accordance with the specific terms of the statute, the property was surrendered to this court by voluntary act of the debtor, who thereby also submitted to its authority. All acts done pursuant to order of this court were within the scope of the primary purpose of the section of the bankruptcy act, because the intention was, in the final phase, to liquidate the property of the bankrupt and distribute it among the creditors. Each step was in accordance with the fundamental equities, and the procedure adopted was that which would have been adopted by

---

[19] 11 U.S.C.A. § 11(7).

[20] Robertson v. Howard, supra.

[21] 11 U.S.C.A. § 207(k).

[22] In re Chez Marianne, Inc. (D.C.) 15 F.Supp. 326; Gerdes Corporate Reorganization, § 1155.

[23] 11 U.S.C.A. § 11(17).

[24] Edelstein v. United States, supra; Sabin v. Larkin-Green Logging Co. (D. C.) 218 F. 984; Larkin-Green Logging Co. v. Sabin (C.C.A.9) 222 F. 814.

[25] None of the defects here are jurisdictional. A trustee appointed by the court has authority to act; In re Austin Resort & Land Co. (D.C.) 12 F.Supp. 459, 462; and a failure to summon creditors for an election is a mere irregularity. Scofield v. United States (C.C.A.6) 174 F. 1, 3. See In re Rosenfeld-Goldman Co. (D.C.) 228 F. 921, 923. A lack of appraisement is insufficient to invalidate a sale by the bankruptcy court or collateral attack. Robertson v. Howard, 229 U.S. 254, 264, 33 S.Ct. 854, 57 L.Ed. 1174. See, also, In re Georgian Hotel Corporation (C.C.A.7) 82 F.(2d) 917, 920. A sale which is informal may not be attacked collaterally. Standley v. Graham Production Co. (C.C.A.5) 83 F. (2d) 489, 491; Dugan v. Logan, 229 Ky. 5, 16 S.W.(2d) 763, 765, 766. On direct attack such a sale is not void. In re Jacobson (C.C.A.9) 4 F.(2d) 211, 213.

840

an equitable tribunal, if uncontrolled by a specific statute.[26] The court, therefore, had jurisdiction.

 It is probable in the event of appeal, the irregularities would be held harmless and nonprejudicial.[27] This court could set the sale aside, even though there was confirmation, because there are no terms in bankruptcy.[28] No objection has been made to any of these orders, and thus all parties interested have acquiesced. Since jurisdiction was present all are estopped.[29] The time for appeal or review has lapsed.[30] The court should not set aside confirmed sales or orders founded in consent and jurisdiction.[31] The previous acts have become the law of this case.[32] However irregular the proceedings, the court had power to determine, even though it determined erroneously.[33] Such orders are not subject to collateral attack.[34] Even though the court still has power to set them aside, it should not use this power to bring technical conformity out of a proceeding which is in accordance with the equities where no objection has been made and where the result fundamentally accorded with the principles of fair dealing. Here the only factor which can cause inequality or injustice is further delay.

The report of the special master is confirmed in all respects and distribution will proceed in accordance with the plan set out therein. The court specifically adopts the opinion of the special master as to the various phases of distribution and payment of costs and expenses.

[26] Broadway Trust Co. v. Dill (C.C.A. 3) 17 F.(2d) 486.

[27] In re Rosenbaum Grain Corporation, supra; In re Shoe & Leather Reporter, Petitioner (C.C.A.1) 129 F. 588, 589.

[28] In re Burr Mfg. & Supply Co. (C. C.A.2) 217 F. 16, 18.

[29] In re Jacobson (C.C.A.9) 4 F.(2d) 211, 213; In re 211 East Delaware Place Building Corporation (D.C.) 14 F. Supp. 96.

[30] 11 U.S.C.A. § 47 (Bankr.Act, § 24, as amended May 27, 1926, c. 406, § 9, 44 Stat. 664, June 7, 1934, c. 426, 48 Stat. 926).

[31] In re Burr Mfg. & Supply Co. supra; Files v. Brown (C.C.A.8) 124 F. 133, 138; In re American Austin Car Co. (D. C.) 12 F.Supp. 893.

[32] Humphrey v. Bankers Mortg. Co. of Topeka, Kan. (C.C.A.10) 79 F.(2d) 345, 352.

[33] Sabin v. Larkin-Green Logging Co., supra.

[34] Edelstein v. United States, supra.