**UNITED STATES NAT. BANK OF OMAHA, NEB., et al. v. PAMP (two cases). \***

**Nos. 10168, 10169.**

Circuit Court of Appeals, Eighth Circuit.

April 23, 1935.

\*Rehearing denied June 24, 1935.

tion of this stay an order of sale issued and was placed in the hands of the sheriff, directing a sale of the land pursuant to the foreclosure decree. The sheriff advertised the property for sale on October 2, 1934. In the meantime, on September 13, 1934, appellee filed a petition in the bankruptcy court under the amended section 75 of the Bankruptcy Act (title 11 U. S. C. § 203 [11 USCA § 203]), alleging that he was engaged primarily in farming on a farm of approximately 160 acres immediately outside the city of Omaha, on which he lived with his family, and which he owned and operated; that he was insolvent and unable to meet his debts as they matured; and that he desired to effect a composition or extension of time to pay his debts under section 75 of the Bankruptcy Act. Attached to the petition are Schedules A and B. Schedule A lists as creditors the appellants and shows the indebtedness to be a note for $14,000, secured by a mortgage upon the farm. The schedule shows the entry of the foreclosure decree, and that it was adjudged therein that there was due on the mortgage indebtedness the sum of $13,097.86, with 10 per cent. interest from the date of the decree. The schedule recites that appellants had paid taxes and assessments levied against the real estate in an amount unknown to the debtor, the record showing these payments to approximate $2,500. Schedule B sets forth an inventory of the real estate, shows that it was described by the mortgage referred to in Schedule A, and alleges the value as $12,000. Schedule B also describes certain live stock, farm machinery, and other personal property of a value of $1,185, and recites that while this property is used in operating the farm, it was delivered to debtor's wife in 1929, in settlement of a divorce proceeding brought by her, and since then it has been considered her property. Schedule B recites that the debtor is a married man, the head of a family, possessed of this real estate, and entitled to the exemptions allowed under sections 20-1553 and 20-1557, Neb. C. S. 1929.

On September 13, 1934, an order was entered, approving debtor's petition as properly filed under section 75, and on the same date the matter was referred to one of the conciliation commissioners of the bankruptcy court for further proceedings. On October 2, 1934, debtor filed his application in the bankruptcy court for a restraining order and injunction. The application alleges the proceedings taken in the state court for

Henry E. Maxwell, of Omaha, Neb. (Edgar M. Morsman, Jr., and George Doane Keller, both of Omaha, Neb., on the brief), for appellants.

Kelso A. Morgan, of Omaha, Neb. (Paul S. Sutton and Max Fromkin, both of Omaha, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

There are here two appeals, one allowed by the bankruptcy court and the other by this court, from the decree of the bankruptcy court restraining appellants from taking any further or additional action in the District Court of Douglas county, Neb., in the foreclosure of a real estate mortgage on property of the bankrupt, the appellee.

Foreclosure of a real estate mortgage covering about 160 acres of farm land near Omaha, Neb., was commenced in the District Court of Douglas county, Neb., by appellants on March 11, 1933, and a decree of foreclosure directing a sale of the land was entered November 10, 1933. Defendant in that suit, appellee here, secured a nine months' stay, as provided by section 20-1506, Neb. C. S. 1929. At the expira-

foreclosure of the mortgage, that after filing the petition in bankruptcy court, notice thereof was filed with the clerk of the state court, and a certified copy of the order approving the petition and a certified copy of the order of reference were filed with the clerk of the state court, and notice thereof given the plaintiffs in the foreclosure action, appellants here, and it is alleged that notwithstanding these proceedings, they would proceed to have the property sold unless restrained. An order to show cause issued, requiring appellants to show cause on October 5, 1934, why the prayer of the application should not be granted, and the sale enjoined. Appellants, in answer thereto, pleaded the following defenses: (1) That they were adverse claimants and could not be proceeded against in the bankruptcy court on summary proceedings without their consent; (2) that section 75 of the Bankruptcy Act encroached upon and invaded the sovereign powers reserved by the states, in violation of the Tenth Amendment to the Constitution; (3) that section 75 of the Bankruptcy Act deprived plaintiffs in the foreclosure action, appellants here, of their property without due process of law, in violation of the due process clause of the Fifth Amendment to the Constitution; (4) that section 75 is not bankruptcy legislation.

The court having held against these contentions, entered its decree restraining appellants from taking any further or additional action in the state court in the foreclosure of their mortgage. By this appeal, appellants bring the same questions to this court.

■ The staying of proceedings to enforce the mortgagee's remedy in the state court is a proceeding in bankruptcy as distinguished from a controversy with an adverse party in bankruptcy proceedings, and hence, the appeal was properly allowed by this court. The appeal allowed by the lower court should, therefore, be dismissed. Triangle Elec. Co. v. Foutch (C. C. A. 8) 40 F.(2d) 353; Chicago Bank of Commerce v. Carter (C. C. A. 8) 61 F.(2d) 986.

■ Though appellants had secured a decree of foreclosure of their mortgage, they were not in possession of the property at the time of the filing of the petition in bankruptcy, but the bankrupt was in possession. This was sufficient to give the bankruptcy court power to hear and determine all questions respecting title, possession, or control of the property in a summary manner.

Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; Page v. Arkansas Natural Gas Corp., 286 U. S. 269, 52 S. Ct. 507, 76 L. Ed. 1096; McDaniel Natl. Bank v. Bridwell (C. C. A. 8) 65 F.(2d) 428; Central Republic Bank & Trust Co. v. Caldwell (C. C. A. 8) 58 F.(2d) 721; Bee Bldg. Co. v. Daniel (C. C. A. 8) 57 F.(2d) 59; Priest v. Weaver (C. C. A. 8) 43 F.(2d) 57; In re Landquist (C. C. A. 7) 70 F.(2d) 929. Appellants were, therefore, not adverse claimants, and the bankruptcy court had jurisdiction to enter the decree in a summary proceeding. The foreclosure proceedings in the state court antedated the bankruptcy proceedings, and appellants contend that Congress could not constitutionally interfere with the jurisdiction of the state court to proceed with the action to foreclose the real estate mortgage pending prior to the commencement of the bankruptcy proceedings.

Subdivision (n) of section 75 of the Bankruptcy Act (11 USCA § 203 (n) purports to subject the farmer and his property, wherever located, to the exclusive jurisdiction of the bankruptcy court, and subdivision (o), 11 USCA § 203 (o) provides that except on petition made to and granted by the judge after hearing and report by the conciliation commissioner, "the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:

"(1) Proceedings for any demand, debt, or account, including any money demand;

"(2) Proceedings for foreclosure of a mortgage on land, or for cancellation, rescission, or specific performance of an agreement for sale of land or for recovery of possession of land;

"(3) Proceedings to acquire title to land by virtue of any tax sale;

"(4) Proceedings by way of execution, attachment, or garnishment;

"(5) Proceedings to sell land under or in satisfaction of any judgment or mechanic's lien; and

"(6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional

sale agreement, crop payment agreement, or mortgage."

The Constitution of the United States is a grant of powers, and the Tenth Amendment provides that the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people. It is the contention of appellants that Congress could not constitutionally invade the jurisdiction of the state court, nor the sovereignty of the state acting through its courts, by legislation which would deprive the state court of power to proceed to effectuate its first acquired jurisdiction, at least where that power had been pursued to the stage of final judgment. The power of Congress under article 1 of the Constitution to establish uniform laws on the subject of bankruptcy throughout the United States is paramount. International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 73 L. Ed. 318; Continental Illinois National Bank & Trust Co. v. C., R. I. & P. Ry. Co., 55 S. Ct. 595, 602, 79 L. Ed. ——.

Sections 67c and 67f of the Bankruptcy Act (section 107 (c, f), 11 USCA) avoided under certain conditions liens acquired upon property of the bankrupt by levies, judgments, attachments, or other proceedings within four months of the filing of the petition in bankruptcy. Speaking of this provision, the Supreme Court, in First National Bank v. Staake, 202 U. S. 141, 26 S. Ct. 580, 583, 50 L. Ed. 967, said:

"To what extent liens obtained by prior judicial proceedings shall be recognized is a matter wholly within the discretion of Congress. It might have validated all such liens, even though obtained the day before proceedings were instituted. It might probably have invalidated all such liens whenever obtained."

In Globe Bank & T. Co. v. Martin, 236 U. S. 288, 35 S. Ct. 377, 381, 59 L. Ed. 583, the court said:

"With attachments and liens thus acquired under state laws, the bankruptcy act dealt in provisions which were superior to all state laws upon the subject, in virtue of the constitutional authority of Congress to enact a uniform system of bankruptcy."

Confessedly, the state could create judicial tribunals with full and adequate power to hear and determine controversies between parties brought before them, to enter final judgments, and to issue process to carry them into execution. Yet such power of the state is subject to control and regulation by Congress when acting pursuant to its constitutional power. Article 6. clause 2 of the Constitution expressly provides that:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Acting within the limits of the power conferred by the Constitution, the federal government is supreme. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257.

In Continental Illinois National Bank & Trust Co. v. C., R. I. & P. Ry. Co., supra, in an opinion by Mr. Justice Sutherland, it is said:

"Article 1, § 8, cl. 4, of the Federal Constitution vests Congress with the power 'to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States'; and the simple question is: does section 77 [11 USCA § 205] constitute a law on the subject of bankruptcies?"

In the final analysis, that seems to be the question determinative of this case. It is contended by appellants that this act is not bankruptcy legislation, but that its real purpose is to enrich the debtor at the expense of his secured creditors. We think this contention is put to rest by the decision of the Supreme Court in Continental Illinois National Bank & Trust Co. v. C., R. I. & P. Ry. Co., supra. Holding that the power of Congress under the bankruptcy clause of the Constitution is not to be limited by the English or Colonial law in force when the Constitution was adopted, the court reviews the Bankruptcy Acts and their history as passed by Congress from time to time, and then observes that:

"The fundamental and radically progressive nature of these extensions becomes apparent upon their mere statement; but all have been judicially approved or accepted as falling within the power conferred by the bankruptcy clause of the Constitution. Taken altogether, they demonstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions as

they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to the present day. And these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed."

The court held that section 77 of the act (11 USCA § 205) was constitutional, and, in discussing that provision, it said:

"It is not necessary to the validity of either that the proceeding should result in an adjudication of bankruptcy. The constitutionality of the old provision for a composition is not open to doubt. In re Reiman, 20 Fed. Cas. pp. 490, 496, 497, No. 11673, cited with approval in Hanover National Bank v. Moyses, supra [186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113]. That provision was there sustained upon the broad ground that the 'subject of bankruptcies' was nothing less than 'the subject of the relations between an insolvent or non-paying or fraudulent debtor, and his creditors, extending to his and their relief.' That it was not necessary for the proceedings to be carried through in bankruptcy was held not to warrant the objection that the provision did not constitute a law on the subject of bankruptcies. The same view sustains the validity of section 77. Both contemplate an adjustment of a failing debtor's obligations; and although actual bankruptcy may not supervene in either, they are none the less laws on the subject of bankruptcies. With due regard for consistency, the constitutional validity of the one cannot well be sustained and that of the other denied, as this court quite evidently recognized in Canada Southern R. Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 366, 27 L. Ed. 1020."

 It is strenuously urged that this act, section 75, is unconstitutional because of the provision subdivision (s), as added by Act June 28, 1934 (11 USCA § 203 (s), wherein it is provided that if the farmer fail to obtain the acceptance of a majority in number and amount of creditors whose claims would be affected by a composition or extension proposal, or if he feels aggrieved by the composition or extension, he may then be adjudged bankrupt, and his property shall then be appraised at "its then fair and reasonable value, not necessarily the market value," encumbrances to remain in full force and effect, and encumbered property to be subject to the claims of secured creditors "up to the actual value of such property as fixed by the appraisal." It is made obligatory upon the secured creditor to discharge his liens of record on the payment by the debtor of the appraised value of the property on which he holds security. If any secured creditor shall file written objections to the manner of payments and the distribution of the debtor's property, the court, after setting aside the debtor's exemptions, is to stay all proceedings for five years, during which five years the debtor may retain possession of all or any part of his property under the control of the court, paying a reasonable annual rental therefor. At the end of five years, or prior thereto, the debtor may pay into court the appraised price of the property of which in the meantime he retains possession. Upon the request of any lienholder on real estate, the court must cause a reappraisal of the real estate, and the debtor shall then pay the reappraised value, if acceptable to the lienholder, into court, otherwise the original appraisal price.

It is argued that this provision is unconstitutional because the lienholder is deprived of his property without due process of law, contrary to the provisions of the Fifth Amendment. Undoubtedly, as said by the Supreme Court in Continental Illinois National Bank & Trust Company v. C., R. I. & P. Ry. Co., supra, the power of Congress has limitations, but "those limitations have never been explicitly defined," and we do not think it necessary to the determination of this case to pass upon the validity of subdivision (s). As yet nothing has been done to appellants' security, except to stay proceedings. It is quite possible that an offer of composition may be made which will be as acceptable to appellants as continued ownership of the mortgage or ownership of the real estate. In other words, the provisions of this subdivision may never be invoked. The unconstitutionality of this subdivision would not necessarily invalidate the other provisions of the act, and ordinarily a litigant can be heard to question a statute's constitutionality only when and so far as it is being or is about to be applied to his disadvantage. Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 S. Ct. 548, 76 L. Ed. 1038.

We therefore refrain from expressing any opinion as to the constitutionality of subdivision (s) of this act. The judgment appealed from is affirmed.