In re GEORGIAN HOTEL CORPORATION.*

ALLEN et al. v. GEORGIAN HOTEL CORPORATION et al.

No. 5577.

Circuit Court of Appeals, Seventh Circuit.
March 31, 1936.

*Certiorari denied 56 S. Ct. 940, 80 L. Ed. ——.

PAGE, Circuit Judge, dissenting.

———◆———

Meyer Abrams, of Chicago, Ill., for appellants.

George M. Burditt and Julian H. Levi, both of Chicago, Ill., for appellee debtor corporation.

Arthur M. Cox, Claude A. Roth, Bernard Nath, and Isaac E. Ferguson, all of Chicago, Ill., for appellee bondholders committee.

Before SPARKS, ALSCHULER, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from an order of the District Court confirming a plan for the debtor's reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207).

In 1925 the debtor gave its mortgage upon its hotel property to secure its bond issues of $1,400,000, of which $1,300,000 were first lien bonds and $100,000 second lien; the first now reduced to $1,255,000, and the second to $39,500. Appellants own $18,500 of the first. There is a bond issue of $500,-000 secured by a junior mortgage on the property, and there are other debts, some with subordinate security and some unsecured, aggregating about $150,000.

The plan which the court confirmed had the expressed approval of about 94 per cent. of the first and second lien bonds, of all of the junior mortgage bonds, and of practically all the other creditors, as well as of the debtor.

Appellants challenged the fairness and good faith, as well as the legality, of the plan as approved. The plan is quite lengthy and complicated, but its salient features with which we are here concerned are:

The organization of a new corporation to take over the assets of the debtor, such new corporation to have an authorized capital of 20,000 shares of common stock, of which about 18,690 will be issued.

The allotment of the issued stock shall be 70 per cent. thereof to the holders of the present first and second lien bonds, on the basis of one share of stock for each $100 of the bonds as held by the respective bondholders; 30 per cent. of the issued stock to be allotted to second mortgage bondholders, general creditors, and stockholders of the debtor in proportions not here material.

The new corporation to issue to the holders of the $1,255,000 outstanding first lien bonds, at the rate of 50 per cent. of the principal amount of old bonds, its first mortgage sinking fund income bonds in the amount of $627,500, said new bonds to mature in twelve years and to bear interest at the rate of 5 per cent. per annum if earned, 2 per cent. of the interest to be cumulative during the first four years, and the full 5 per cent. to be cumulative thereafter. The trust deed securing the new bonds shall provide that it may be released and the income bonds satisfied for a consideration equal to or less than the total amount of such bonds outstanding, and that the terms and provisions of the new trust deed or of the income bonds may be otherwise altered or modified upon written consent of 75 per cent. or more in amount of the outstanding income bonds.

Appellants particularly assail the provision for eliminating the first mortgage bonds, and in their stead giving their holders one-half of their holdings in first mortgage income bonds of the new corporation secured on the hotel property, and corporate stock for the balance.

For the benefit of its creditors, this debtor has brought into bankruptcy all its assets, beyond which these bondholders could in no event thereafter have looked for satisfaction of their bonds. The acceptance of the plan extends the time of the maturity of the bonds, and the 50 per cent. of their face remains a first lien as before. If the operations of the newly formed corporation prove successful and its stock should

919

prove valuable, to that extent the remaining half of the original debt will be protected (except as to the 30 per cent. of the stock set aside for the other creditors). If it should not be successful, it is very unlikely that the retention of the lien of the original first lien bonds would have realized any more for their holders. So, while the form of the security is changed, we are of the opinion that in substance it is not materially impaired.

■ Reasonable modification of existing securities is within the powers conferred by section 77B(b) of the Bankruptcy Act, 11 U.S.C.A. § 207(b),[1] and is in general supported by many decisions.

■ If we understand the contention correctly, appellants urge that section 77B, in so far as it empowers the bankruptcy court to require minority nonconsenting creditors of a particular class to accept any major modification of their original contractual relation, is unconstitutional and void. No cases in point are cited to support the proposition, and, in view of the generally contrary trend of authority,[2] we will not undertake further discussion of the proposition beyond stating that we do not sustain it.

■ Appellants assert gross unfairness in that part of the plan which permits such changes in the terms of the new bonds to be subsequently made as may be authorized by 75 per cent. of the holders of those bonds. The evident intent of this was to provide power and flexibility for meeting unforeseen contingencies as they might arise, and to provide, so far as may be, against resort to another reorganization proceeding in case

this one cannot without alteration be ultimately carried out.

Unquestionably this or any other granted power may be abused. Fraudulent and oppressive invasion of minority rights and equities which appellants' brief points out might be attempted by the majority. But prevention of such inequities is a subject-matter of the jurisdiction of equity, whose long and strong arm may readily and presumably effectively be invoked against it. This provision is not materially different from like provisions of bankruptcy, which prescribe the majorities which may bind an entire class.

In Warner Bros. Pictures, Inc., et al. v. Lawton-Byrne-Bruner Ins. A. Co. (C.C.A.) 79 F.(2d) 804, 818, the court dealt with this and some other of the propositions here, saying: "The evident purpose of making the bonds income bonds is to remove the very menace of fixed charges which occasioned the difficulties of the business resulting in reorganization. * * * The provision giving 75 per cent. of the bonds power to consent to release or to alteration is not unfair. No release or alteration could affect appellant in any way different to other bondholders; it is not to be assumed that 75 per cent. of bonds (widely held) would agree to release or alteration disadvantageous to themselves; the provision permits elasticity of action for accommodation to future situations as they may develop in the progress of the business."

■ As to allotment of 30 per cent. of the stock to the subordinate creditors, we believe that this was fairly within the judicial

---

[1] "A plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise; * * * (9) shall provide adequate means for the execution of the plan, which may include the transfer of all or any part of the property of the debtor to another corporation or to other corporations, * * * or the retention of the property by the debtor, the distribution of assets among creditors or any class thereof, the satisfaction or modification of liens, indentures, or other similar instruments, the curing or waiver of defaults, extension of maturity dates of outstanding securities, the change in interest rates and other terms of such securities, the amendment of the charter of the debtor, and the issuance of securities of either the debtor or any such corporation or corporations, for cash, or in exchange for existing securities, or in satisfaction of claims or rights, or for other appropriate purposes; xx" See, also, Warner Bros. Pictures, Inc., v. Lawton-Byrne-Bruner Ins. A. Co. (C.C.A.) 79 F.(2d) 804; Campbell v. Alleghany Corp. (C.C.A.) 75 F.(2d) 947.

[2] Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Id. (C.C.A.) 72 F.(2d) 443; Humphrey v. Bankers Mortg. Co. (C.C.A.) 79 F.(2d) 345; In re Central Funding Corp. (C.C.A.) 75 F.(2d) 256; Grand Blvd. Inv. Co. v. Strauss (C.C.A.) 78 F.(2d) 180; In re New Rochelle Coal & Lumber Co. (C.C.A.) 77 F.(2d) 881, and Campbell v. Alleghany Corp., supra.

discretion of the District Court. While it is not likely that at the present time the subordinate creditors would have realized anything if the first mortgage had been foreclosed, these creditors would, for three months after one year following the foreclosure sale, have had a right of redemption —a right which might have been valuable. And there is the possibility that, with a substantial "come-back" in affairs, property values may increase sufficiently to give the debtor a substantial equity in the property of which these creditors would have the benefit. Such possibilities would tend to support the court's discretion in making some allowance to these creditors in a proceeding under which there is to be effected a present adjustment of all the claims against the debtor, of whatever rank or class. This was evidently the view taken by the District Court, and it receives support from Warner Bros. Pictures, Inc., v. Lawton-Byrne-Bruner Ins. A. Co., supra. We see nothing in the plan or the record tending to indicate abuse of the court's discretion in this respect.

■ Appellants assume to find impropriety in the fact that, prior to the adoption of the plan, no definite formal appraisal of the property was made. In appellants' objections to the adoption of the plan, no such suggestion was made; and, although it definitely developed upon the hearing of the objections that no such appraisal had in fact been made, no such objection was raised, and no steps were taken looking to the requirement of such appraisal for the guidance of the court in acting upon the plan, if any one in interest then deemed it essential. It appears that the successor bondholders' committee of three had intimate relations with this and other property, one of its members being a certified public accountant and the other two dealers in real estate. There was testimony given as to the status of the property, the original cost of the plant, its probable replacement cost, the income derived and charges and upkeep, and other matters having direct bearing on the value of the property and its future prospects. Such evidence was informative and helpful to the court in the exercise of its discretion. In view of the circumstances pointed out, the absence of a formal appraisal was not such an omission as should of itself condemn the plan.

■ Much is said in appellants' brief on the subject of the personnel of the original bondholders' committee and of its successors and of the trustees who are suggested in the plan to take charge of the reorganized concern. It is contended that they are all under the influence and domination of the interests which floated the original bond issue, and that therefore the entire scheme is fraudulent and void. Again we fail to see wherein the court in this respect abused its discretion. If trustees who may be constituted under the plan are recreant to their trust and fail to discharge their duties, any one interested may, on application to the court, have an investigation and such relief as the nature of the case may require.

■ It appears that before the institution of this proceeding foreclosure suit under the first mortgage bonds was begun in the state court and had progressed to the entry of a foreclosure decree, under which no sale was made. Appellants contend that section 77B, in so far as it vests in the bankruptcy courts jurisdiction over the debtor's property as to which litigation was proceeding in the state courts, is an unconsititutional encroachment upon the authority of the states, and that therefore the bankruptcy court was without jurisdiction to adjudicate upon this property as to which the state court had rendered the decree of foreclosure. No authorities are cited in support of this proposition, and, in view of what was said in Continenal Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., supra [Id. (C.C.A.) 72 F. (2d) 443],[3] the contention does not impress us.

The order of confirmation is affirmed.

PAGE, Circuit Judge, dissents.

---

[3] See, also, as bearing directly upon section 77B, Grand Blvd. Inv. Co. v. Strauss (C.C.A.) 78 F.(2d) 180; In re Argyle-Lake Shore Bldg. Corp. (C.C.A.) 78 F.(2d) 491; In re Prudence-Bonds Corp. (C.C.A.) 77 F.(2d) 328; In re Island Park Associates, Inc. (C.C.A.) 77 F.(2d) 334; and, generally, Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; United States Nat. Bank v. Pamp (C.C.A.) 77 F.(2d) 9, 99 A.L.R. 1370; In re Kusel (C.C.A.) 75 F.(2d) 314; Collins v. Welsh (C.C.A.) 75 F.(2d) 894, 99 A.L.R. 1319.