**UNITED STATES NAT. BANK OF OMAHA, NEB., et al. v. PAMP.**

No. 10461.

Circuit Court of Appeals, Eighth Circuit.

May 11, 1936.

Henry E. Maxwell, of Omaha, Neb. (Edgar M. Morsman, Jr., and George Doane Keller, both of Omaha, Neb., on the brief), for appellants.

Kelso A. Morgan, of Omaha, Neb. (Paul S. Sutton and Max Fromkin, both of Omaha, Neb., on the brief), for appellee.

Before GARDNER, VAN VALKEN-BURGH, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order granting the application of a debtor to reinstate his petition under the amended Frazier-Lemke Act (Act of August 28, 1935, § 6, 49 Stat. 942, 11 U.S.C.A. § 203 (s), and staying proceedings in foreclosure of a real estate mortgage against the debtor. The issue to be determined is the constitutionality of that act as applied to the facts in this case.

Foreclosure of a real estate mortgage covering about 160 acres of farm land near Omaha, Neb., was commenced by appellants in the state district court March 11, 1933, and a decree of foreclosure, directing a sale of the property, was entered November 10, 1933. The mortgagor, defendant in that suit, appellee here, applied for and obtained a nine months stay as provided by section 20-1506, Neb. C.S.1929. At the expiration of this stay, an order of sale issued, and the sheriff, pursuant to the foreclosure decree, advertised the property for sale on October 2, 1934. On September 13, 1934, appellee filed his petition and schedules in the bankruptcy court under section 75 of the Bankruptcy Act, as amended June 7, 1934, and June 28, 1934, 48 Stat. 925, 1289 (see title 11 U.S.C.A. § 203). In the petition he alleged that he was engaged in farming the mortgaged

tract, on which he lived with his family and which he owned and operated; that he was insolvent and unable to meet his debts as they matured; and that he desired to effect a composition or extension of time to pay his debts under section 75 of the Bankruptcy Act. The schedules listed appellants as creditors to the extent of a note of $14,000, secured by a mortgage on the farm, the entry of the foreclosure decree, and adjudication of the mortgage indebtedness in the sum of $13,097.86, with 10 per cent. interest from the date of the decree. Payment of taxes on the land by appellants, amounting to approximately $3,300, was shown.

On September 13, 1934, an order was entered approving the debtor's petition as properly filed, and on October 2, 1934, the debtor filed an application in the bankruptcy court for an injunctional order staying proceedings in foreclosure of the mortgage. On this application, an order to show cause issued, requiring appellants to show cause on October 5, 1934, why the prayer of the application should not be granted and the sale enjoined. Appellants resisted the application, but the court overruled their contentions and entered a decree restraining them from taking any further or additional action in the state court in the foreclosure of their mortgage. Appellants then appealed to this court, and we affirmed the decree, holding the act constitutional to the extent that it was bankruptcy legislation and that other feaures of the alleged unconstitutionality were not before the court for decision. 77 F.(2d) 9, 12, 99 A.L.R. 1370.

On October 2, 1934, the foreclosure sale was held and the property was bid in by appellants for $14,345.53, the amount of the foreclosure decree, with interest and costs of suit. The sale has not been confirmed. Appellee was adjudged bankrupt on his petition December 14, 1934.

On May 27, 1935, the Supreme Court, in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, held the first Frazier-Lemke Act unconstitutional (48 Stat. 1289 (see 11 U.S.C.A. § 203 (s). On August 28, 1935, the amended Frazier-Lemke Act became law. On July 2, 1935, the lower court, on its own motion, vacated its order of October 5, 1934, restraining further proceedings in the foreclosure suit, vacated the adjudication of bankruptcy, and granted leave to the holders of liens to maintain

and prosecute actions thereon, the same as though bankruptcy proceedings had not been brought, and the bankruptcy proceedings were dismissed.

On September 5, 1935, appellee filed his petition in the bankruptcy court, setting forth the proceedings under the first Frazier-Lemke Act, 48 Stat. 1289, and praying that the order of July 2, 1935 be set aside and the bankruptcy proceedings be restored. An order was accordingly entered by the court, reinstating the proceedings and setting aside and annulling the order of July 2, 1935. On October 1, 1935, the court set aside and vacated the order of September 5, 1935, and by the same order directed that the application of appellee to reinstate his petition be granted, and. the amended petition was reinstated. It was also ordered that all judicial proceedings or official proceedings in any court should be stayed for a period of three years, and that appellee should be allowed to retain possession of all his real or personal property under supervision of the court, on condition that he pay to the clerk of the court a reasonable semiannual rental. The matter was referred to the conciliation commissioner as referee for hearing and report on the question as to the rental value of the property. On October 4, 1935, appellants filed their application to vacate the order of October 1, 1935, on grounds going to the invalidity of the first and second Frazier-Lemke Acts. The court denied this application, and this appeal has followed.

The proposed plan of composition and extension filed by appellee has not been accepted. The property has been appraised as required by subdivision (s) of the act, 11 U.S.C.A. § 203 (s). Appellants, in their challenge to the validity of the amended Frazier-Lemke Act, contend as follows: (1) The Act of August 28, 1935, violates the Fifth Amendment; (2) it is not bankruptcy legislation, but a pretext of exercise of the power to enact laws on the subject of bankruptcy; (3) it is an attempt on the part of Congress to exercise police powers in violation of the Tenth Amendment; (4) jurisdiction of the state court having first attached in an action in rem, Congress was without power to defeat or interfere with the jurisdiction of the state court and its dominion and control over the real estate in the foreclosure action; (5) there should be no administration of the real estate because no substantial equity remains in it for the bankrupt.

We shall first consider whether any title of a substantial nature remains in the bankrupt, for, if not, there would seem to be no subject-matter upon which the act in question could be made effective. This is not to be confused with the question of whether his equity was of a substantial pecuniary value. The property has gone to sale, but the sale not having been confirmed, the legal title is still vested in the bankrupt. If the validity of the amended Frazier-Lemke Act be assumed, then all these proceedings are avoided, and the mortgagee has its mortgage unforeclosed, though in default. Subdivision (n), § 75, 11 U.S.C.A. § 203 (n), provides in part as follows:

"The filing of a petition * * * shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others, contracts for purchase, contracts for deed, or conditional sales contracts, the right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition.

"In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, or where the right under a deed of trust has not or had not become absolute, or where the sale has not or had not been confirmed, or where deed had not been delivered, the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section."

Section 75 embraces land in which the debtor has some interest. In re Tracy (C.C.A.7) 80 F.(2d) 9. Whether the debtor or bankrupt has an interest left in the property depends upon the application of local rules of property which, of course, are binding upon this court. It is therefore necessary to consider what the relative rights of appellants and appellee were after the foreclosure sale, as well as before, because the status of the parties at the time of the bankruptcy cannot be disregarded.

In Nebraska, a mortgagee has the right (1) to foreclose a mortgage of real estate in court and to have a decree of the court for the sale of the mortgaged premises, to discharge the amount due on the mortgage with costs of the suit (sections 20-2139, 20-2140, C.S.1929); (2) to have a sale of the mortgaged premises under the decree by the sheriff or some other person authorized by the court in the county where the premises or some part of them are situated (section 20-2146, C.S.1929); (3) upon the return of the officer to have a confirmation of the sale by the court, and its order that the officer make to the purchaser a deed of the lands and tenements, the court being satisfied that the sale has in all respects been made in conformity to the provisions of the Nebraska statutes, and that the property sold for fair value, under the circumstances and conditions of the sale, or that a subsequent sale would not realize a greater amount, and the court may then order that the officer make to the purchaser a deed of the land (section 20-1531, C.S. 1929, as amended by Laws 1933, c. 45); (4) to have a receiver appointed by the court in an action for foreclosure of the mortgage where the mortgaged property is in danger of being lost or removed or materially injured, or is probably insufficient to discharge the mortgage debt; (5) after the court has confirmed the sale and directed the execution of a deed to the property, the officer is required to execute it, and the deed vests in the purchaser "the same estate that would have vested in the mortgagee if the equity of redemption had been foreclosed, and no other or greater"; the deed of the officer is as valid as if executed by the mortgagor and mortgagee, and shall be an entire bar against each of them, and all parties to the suit in which the decree for such sale was made, and against their heirs respectively, and all persons claiming under such heirs. Section 20-2147, C.S.1929. The mortgagor is entitled to a stay of the order of sale. Section 20-1506, C.S.1929, provides: "The order of sale on all decrees for the sale of mortgaged premises shall be stayed for the period of nine months from and after the rendition of such decree, whenever the defendant shall, within twenty days after the rendition of such decree, file with the clerk of the court a written request for the same: Provided, if the defendant make no such request within said twenty days, the order of sale may issue immediately after the expiration thereof."

While the sale of the property was completed, it has not been confirmed, and, of

498

course, a sheriff's deed to the purchaser has not issued.

██ In confirming the sale under the Nebraska statutes, the trial court passes on the regularity of the foreclosure proceedings and the proceedings leading thereto. It will not set the sale aside for mere inadequacy of price, unless such inadequacy is so gross as to make it appear that it was the result of fraud or mistake. Lindberg v. Tolle, 121 Neb. 25, 235 N.W. 670; First Nat. Bank v. Hunt, 101 Neb. 743, 165 N. W. 139.

██ In a sale made under a decree of foreclosure, the court is vendor. Such a sale is a judicial sale, and no legal title passes until the sale is confirmed. State Bank v. Green, 8 Neb. 297, 1 N.W. 210; Neligh v. Keene, 16 Neb. 407, 20 N.W. 277. The mortgagor may redeem from the sale at any time before the order of confirmation becomes final. Philadelphia Mortgage Co. v. Gustus, 55 Neb. 435, 75 N.W. 1107. The legal title to the mortgaged property remains in the mortgagor and is not divested until confirmation of sale and the execution of deed pursuant to such confirmation. Hatch v. Shold, 62 Neb. 764, 87 N.W. 908. While the judgment or decree of sale and the sale itself are necessary steps in cutting off the equity of redemption of the mortgagor, the final and decisive step is the order confirming the sale and the issuance of deed pursuant to such order, and until these have been consummated, the mortgagor has a substantial estate or interest in the land.

██ The power of Congress to enact laws on the subject of bankruptcy is subject to the provisions of the Fifth Amendment, and mortgage liens on real estate are protected by that amendment. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 865, 79 L.Ed. 1593, 97 A.L.R. 1106. The mortgage in this case was executed in 1928, and, as in the Radford Case, the inquiry must be whether the security and the rights pertaining to its enforcement have been substantially impaired by the Act of August 28, 1935.

Succinctly stated, the Nebraska mortgage foreclosure statutes provide for a decree of foreclosure in a suit by the mortgagee, to be followed by a public sale, confirmation, and deed, the decree of sale to be subject to a stay of nine months if the mortgagor so requests.

In Louisville Joint Stock Land Bank v. Radford, supra, the Supreme Court held that a mortgagee under the Kentucky statutes had the following rights:

"1. The right to retain the lien until the indebtedness thereby secured is paid.

"2. The right to realize upon the security by a judicial public sale.

"3. The right to determine when such sale shall be held, subject only to the discretion of the court.

"4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt."

██ While the court there had under consideration the Kentucky statutes, and the rights of the mortgagee and mortgagor in the instant case must be considered with reference to the Nebraska statutes, the summary of the rights of the Kentucky mortgagee may be taken, with slight qualification, as expressing the rights secured to a mortgagee in Nebraska. The first and fourth of these rights seem not to have been taken from the Nebraska mortgagee by the amended Frazier-Lemke Act. Whether the fifth right, that of having a receiver, is unconstitutionally impaired is an abstract question here because the property is a homestead, and the Nebraska rule is that the right to have a receiver take charge of the property in an action for foreclosure is not applicable where the mortgaged property is the homestead of the defendant mortgagor. Chadron Loan & Bldg. Ass'n v. Smith, 58 Neb. 469, 78 N. W. 938, 76 Am.St.Rep. 108; Sanford v. Anderson, 69 Neb. 249, 95 N.W. 632.

██ The question, therefore, narrows itself to a consideration of the second and third rights referred to in the Radford Case. Is the mortgagee deprived of the right to determine when the sale shall be held, and is he deprived of the right to apply to the court to have the sale confirmed under the rules applying to confirmation established by the Nebraska courts, and to have a deed issued to the purchaser by the

officer conducting the sale; and is he deprived of the right to enjoy and realize the results of the sale?

Subdivision (s), as amended (11 U.S. C.A. § 203 (s), provides that when there has been a failure of proposed conciliation and compromise under subdivisions (a) to (r), the debtor may be adjudged bankrupt, his exemptions set aside to him, his property appraised at its then fair and reasonable market value, and possession of all the property, non-exempt as well as exempt, to remain in the debtor subject to existing liens. When this has been done, the court must stay all proceedings against the debtor or his property for three years. The debtor retains possession of the property, provided he pays a reasonable rental semiannually. The rental (the first payment of which is not due until one year from the date of the order staying proceedings) is to be the amount and kind of rental customary in the community where the property is located, based upon the rental value, net income, and earning capacity of the property. The rental is to be paid into court to be used, first, for the payment of taxes and upkeep of the property, and the remainder, if any, is to be distributed among secured and unsecured creditors, and applied to their claims, as their interests may appear. In addition to rental, the court, in its discretion, may require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, such payments to be made quarterly, semiannually, or annually, "not inconsistent with the protection of the rights of creditors and the debtor's ability to pay, with a view to his financial rehabilitation."

1 At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances or exemptions up to the amount of the appraisal, less the amount paid on principal. Upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or, in its discretion, set a date for hearing, and after such hearing fix the value of the property in accordance with the evidence submitted, and the debtor shall then pay into court the value so fixed, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon

the court, by order, is required to turn over full possession and title of the property, free and clear of encumbrances, to the debtor. Upon request in writing by any secured creditor or creditors, the court must order the property upon which secured creditors have a lien to be sold at public auction. The debtor, within ninety days, may redeem any property sold at such sale by paying into court the amount for which it was sold, together with 5 per cent. per annum interest, and he may apply for a discharge. If the debtor at any time fails to comply with the provisions of section 75, or with any orders of the court made pursuant thereto, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided in the Bankruptcy Act.

Considered in their entirety, it seems clear from these provisions that upon failure of the farmer to obtain the acceptance of a majority in number and amount of the creditors to his proposal of composition or extension, all proceedings against him and his property are subjected to a stay for an arbitrary period of three years, subject to the one exception considered later, and to the possibility that the debtor may fail to comply with the provisions of section 75, or with orders of the court made pursuant thereto. The pervading purpose of subdivision (s) is to accomplish this stay. The debtor, at his option, may shorten the period by paying into court the amount of the appraisal, less any amounts paid on principal. If this option is exercised, then the provision for a reappraisement at the request of secured or unsecured creditors or the debtor, and a purchase by the debtor at the reappraised value, may be invoked, or the provision for a sale at the request of a secured creditor may be resorted to. It may reasonably be said that the stay is for a period of three years, subject to being shortened by the mortgagor at his uncontrolled discretion.

Appellants, under the Nebraska practice, were entitled to ask the state court for a confirmation of the sale and for a sheriff's deed, if the sale were confirmed. They are denied that right by the amended Frazier-Lemke Act. They are also denied the right given them to determine when that sale shall be held, which seems in Nebraska to be absolute, except for the nine months stay, which, upon request of

the mortgagor, the court must grant, and they are compelled to submit to a three years delay, which may be shortened only at the option of the debtor. There is no escape from the conclusion that the mortgage creditor is deprived of a substantial right by this act, in that the right to determine when a sale shall be held, subject to any discretion the court may have, is taken from the court and vested in the mortgagor, who may enforce a delay of at least three years. Delays necessarily incident to procedure will, of course, extend that period somewhat. In the instant case the situation is even more extreme because the sale has been held, and appellants were entitled to have that sale confirmed and to receive a deed. During the three year period of stay, a rental is to be paid into court, to be used, first, for paying taxes and upkeep on the property. There is no assurance of any kind that the rental, the first payment of which is not due for a year, will be paid. No security is required to insure that it will be paid.

A mortgagee may suffer substantial injury from the application of that part of the statute which directs the reasonable rental to be used, first, for payment of taxes and upkeep of the property, and the remainder to be applied to secured or unsecured claims. In paying taxes and keeping the property in repair, the whole or a substantial part of the income for three years may well be exhausted. This conceivably might not benefit any one except the mortgagor, and take from the mortgagee income to which, in the event of foreclosure, he would be entitled. At a foreclosure sale a third person may purchase the real estate. The mortgagee then receives cash, but section 75 contemplates that if a third person should be the successful bidder at the foreclosure sale, the bid shall be avoided, and the purchaser released from his bid by the supervening bankruptcy and stay. In re Finks (C.C.A. 6) 224 F. 92. The mortgagee, instead of receiving the cash proceeds from the sale, reverts to his prior position of a mortgagee with an unforeclosed lien. In this case, the mortgagees were purchasers at their own sale, and in considering the effect of the act, both situations should be kept in mind. In the one case, where the third person is purchaser, the mortgagee, as already observed, is deprived of the right to receive cash and the right at once to reinvest it and receive income from it. In-

stead of that right, section 75 and its resulting enforcement, may take from him the income which he would thus have a right to receive, either entirely or to a substantial degree.

If the mortgagee should be the purchaser at his sale, then, in place of ownership of the property, with the right, if he chooses, to dispose of it, or to hold it and rent it as he may see fit, he is compelled to take a tenant not of his own selection at a rental fixed, as the statute provides, at "the usual customary rental in the community where the property is located." Then, out of the rent, the taxes on the property must be paid. This might be for the benefit of the mortgagor alone, for if he exercises the option to purchase at the appraised value, he secures the property free of tax liens which otherwise might have accrued against it.

The mortgagee might, as provided in the act, request a reappraisal, in which event the property could be purchased by the mortgagor at the reappraised value, or the mortgagee might request a sale at public auction. If the property is reappraised and the debtor purchases it, it might well occur that the new valuation would be exactly and mathematically increased by the amount of the taxes paid. If a sale is made at public auction on request of the mortgagee, the same might be true. The sale price might be larger because the taxes were paid. The secured creditor, it may be assumed, will not demand a reappraisal or public auction, unless the property has increased in value. If it has depreciated, the debtor may be expected to request the reappraisal. If, at public auction, or on reappraisal, the property sells for more than the original appraisal, it is still true that the taxes have been paid out of income that the mortgagee would have been entitled to. The mortgagor acquires his property back with all taxes paid if he purchases on a reappraisal. If the property is sold at public auction, the same may occur, for the debtor may redeem by paying the sale price, plus interest at 5 per cent. If the property depreciates and is sold on reappraisal or public auction, the situation is even more aggravated. The mortgagee has had his hands tied. At the end of three years he receives less than the original appraisal, and the mortgagor receives his property back with the taxes paid. If the debtor fails to comply with the provisions of section 75, or with or-

ders of the court made pursuant thereto, or if the debtor is unable to refinance himself within three years, a trustee may be appointed and a sale or other disposition made as provided in the Bankruptcy Act (11 U.S.C.A. § 1 et seq.). In that event, the mortgagee will have taken the risk that in the meantime the value of real estate may shrink. In bankruptcy, a stay of reasonable duration and the risk naturally accompanying it may be accepted as an incident of the proceeding. But creditors must not be subjected to irreparable injury by unreasonable suspension of their remedies. Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L. Ed. 1110. Whether the trustee should sell the property, or eventually abandon it to the mortgagee, a stay of three years, or even less, is inconsistent with the principles of equity and fairness. An additional hazard is placed upon the mortgagee without fair compensation.

The debtor's offer of compromise or extension requested that he be permitted to retain possession, control and use of all his present property for a period of at least three years, during which time he represented that he would endeavor to rehabilitate himself financially, and that he would make annual payments of $200, to be applied, first, to the payment of taxes on the real estate, and, second, to the payment of interest to secured creditors, according to their respective interests and priorities. The court has ordered that the conciliation commissioner fix a time when a hearing should be had as to the proper amount of rental and the time of payment, and that the conciliation commissioner should make report of such hearing with his recommendations and advice, and that thereafter the proper rental, time and mode of payment of same should be fixed by the court on application of any party in interest. This appeal was taken soon after this order was made, and so it does not appear what rental the court has approved or what has been recommended to it by the conciliation commissioner.

Ordinarily, a litigant can be heard to question a statute's constitutionality only when and so far as it is being or is about to be applied to his disadvantage. United States Nat. Bank v. Pamp (C.C.A.) 77 F. (2d) 9, 99 A.L.R. 1370. This act makes it mandatory upon the trial court to apply the rental income from the property, first, to the payment of taxes and upkeep. Consideration of whether application of such rent to such purposes contributes to the unconstitutionality of the statute is therefore proper because the question has gone beyond the boundary of the purely abstract. The situation is one in which the rule that the constitutional validity of a statute is to be tested not by what has been done under it, but what, under its provisions, rightfully may be done, is applicable. Town of Samson v. Perry (C.C.A.5) 17 F.(2d) 1; Montana Co. v. St. Louis Mining & Milling Co., 152 U.S. 160, 14 S.Ct. 506, 38 L.Ed. 398.

The conclusion is inescapable that the amended act, with its provision for a three year stay, violates the Fifth Amendment because it takes from appellants, without compensation, valuable rights in the mortgaged property, and gives them to the appellee. Louisville Joint Stock Land Bank v. Radford, supra. Appellants are denied, during this moratory period, the right they otherwise would have had to a sale of the property and an application of the proceeds of sale to their debt. In Re Schoenleber (D.C.) 13 F.Supp. 375, the District Court of Nebraska has reached this same conclusion. Other courts, although considering different state laws, have reached the same result. In re Lowmon (C.C.A.7) 79 F.(2d) 887, 890; In re Young (D.C.Ill.) 12 F.Supp. 30; In re Sherman (D.C.Va.) 12 F.Supp. 297; In re Lindsay (D.C.Iowa) 12 F.Supp. 625; In re Tschoepe (D.C. Tex.) 13 F.Supp. 371.

In Re Lowmon, supra, in commenting upon the intended effect of the amended act, it is said: "Thus at the end of three years and ninety days the mortgagee may receive exactly what he was entitled to under the completed adjudication according to the laws of the state at the beginning of that period."

This may likewise be said in the instant case. It is urged that the act is declared to be an emergency and contains provision that if, in the judgment of the court, such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay and proceed to liquidate the estate. This, it is contended, makes the stay an indeterminate one to be granted or denied and continued for such length of time as the court, in its discretion, may consider for the best interests of the estate. The provision is vague as to what is meant by the expression, "This

title is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings * * * and proceed to. liquidate the estate." (Frazier-Lemke Act [Bankr.Act § 75 (s), (6)], as amended 11 U.S.C.A. § 203 (s) (6). The provision comes dangerously near being an attempt to confer legislative powers upon the courts. In re Schoenleber, supra. But be that as it may, it is ·clearly unconstitutional on another ground.

Congress is granted power to enact uniform laws on the subject of bankruptcy. Const. art. 1, § 8. The uniformity referred to is a geographical uniformity (Leidigh Carriage Co. v. Stengel (C.C.A.6) 95 F. 637), and while the uniformity required does not prohibit the recognition of the laws of the several states in certain particulars, even though they may lead to different results in different states (Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507), yet the uniformity demanded by the Constitution is manifestly denied when the statute might be in effect in one or more parts of the country and not in effect in other parts. ·We think the provision is clearly void.

 It is contended that the decree of foreclosure in the state court has removed the property from the jurisdiction of other courts, and that Congress was therefore without power to defeat or interfere with the state court's jurisdiction and control over real estate in the foreclosure suit. The principle is well settled by repeated decisions that where a court has taken jurisdiction over property, its jurisdiction over that property excludes the jurisdiction of all other courts over the same property. Marcell v. Engebretson (C.C.A.8) 76 F.(2d) 876; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. This principle, however, has no direct application here. Congress, by the statute, has clearly said that prior judicial proceedings in foreclosure shall not continue, but shall be stayed. by proceedings in bankruptcy court. In the prior appeal, we said: "Confessedly, the state could create judicial tribunals with full and adequate power to hear and determine· controversies between parties brought before them, to enter final judgments, and to issue process to carry them into execution. Yet such power of the state is subject to

control and regulation by Congress when acting pursuant to its constitutional power."

Recognizing the paramount power of Congress to enact bankruptcy legislation, we held that prior jurisdiction of the property, and even the entry of a decree of foreclosure, would not prevent Congress from enacting bankruptcy legislation which would subject the property to the exclusive control and jurisdiction of the bankruptcy court.

It is urged by appellants that the rule of the law of the case should not apply because the order appealed from on the former appeal was an interlocutory one, but further consideration of the question leads to the same conclusion. The judgment must be regarded as a remedy for the enforcement of vested contractual rights, or as a step in the enforcement of that remedy.

 Unlike state legislatures, Congress is not prohibited from impairing the obligation of contracts, yet it. may not take substantial rights in specific property acquired prior to the act. Louisville Joint Stock Land Bank v. Radford, supra. The question must be considered from the standpoint of a lessening of the value of the rights of the mortgagee, and not as the impairment of the obligation of the contract. While Congress ·cannot take from one his substantial rights in property in which his interest is that of security for an indebtedness, yet a change in the remedy afforded by state law is recognized as a necessary incident to bankruptcy proceedings. Thus, in Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 116, 76 L.Ed. 256, 78 A.L.R. 453, it is said: "Realization upon the lien created by the state law must yield to the requirements of bankruptcy administration."

The paramount power of Congress to deal with the question of the enforcement of liens in bankruptcy courts is well considered in Re Jacobs (D.C.Ill.) 7 F.Supp. 749. See, also, In re Faour (C.C.A.2) 72 F.(2d) 719.

In Allebach v. Thomas (C.C.A.4) 16 F.(2d) 853, 855, referring to the general question of impairment of the lien and enforcement of it in bankruptcy court, quoting from In re Jersey Island Packing Co. (C.C.A.9) 138 F. 625, 2 L.R.A.(N.S.) 560, the court said: " 'The remedy may be altered without impairing the obligation of his contract, so long as an equally efficient

and adequate remedy is substituted. Every one who takes a mortgage, or deed of trust intended as a mortgage, takes it subject to the contingency that proceedings in bankruptcy against his mortgagor may deprive him of the specific remedy which is provided for in his contract.' "

█ In the instant case, appellants' lien had ripened into a judgment, and in that respect certain rights accrued to them,· which, prior to adjudication, were only contingently possessed. In Collins v. Welsh (C.C.A.9) 75 F.(2d) 894, 897, 99 A.L.R. 1319, a case arising under section 74 of the Bankruptcy Act (see 11 U.S.C.A. § 202), it was held that the rights of a judgment creditor are property rights, but inferentially the court concluded that the judgment does not preclude the administration of the debtor's property in bankruptcy. It is there said: "The Congress has power to vest in the District Court the administration of debtors' property. The District Court has assumed that power, but has not yet exercised it. The question of how that court shall deal with the property and what shall be done by it is not involved in this appeal."

█ The disposition to be made of the creditors' rights is one in which, to be sure, Congress is limited by the Fifth Amendment, and if it substitutes a remedy substantially as efficacious, prompt and adequate, the mortgagee has no just cause for complaint. If the substituted remedy substantially impairs the existing remedy, then the mortgagee is deprived of his substantive rights, and the bankruptcy legislation is unconstitutional because violative of the Fifth Amendment. Louisville Joint Stock Land Bank v. Radford, supra; Worthen Co. v. Kavanaugh, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298, 97 A.L.R. 905.

█ It is urged by appellants that the judgment is inviolable under the full faith and credit clause of the Constitution (article 4, § 1). This clause prescribes a rule by which courts, federal and state, are to be guided where a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records and judicial proceedings in a state other than that in which the court is sitting. Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870. It is not a limitation upon the power of Congress to enact bankruptcy legislation.

█ Due process of law is not concerned with the mere form of procedure. Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165. Substitution of the bankruptcy court for the state court as the tribunal by which the relative rights of the parties shall be determined is not a denial of due process. In the amended Frazier-Lemke Act, however, Congress has not only changed the forum, but has changed the otherwise applicable procedure substantially and to the prejudice and detriment of appellants.

█ It is finally urged by appellee, in support of the judgment appealed from, that under the doctrine of Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, the law may be sustained. The teaching of that case is that a state may enact legislation temporarily extending during a period of financial depression the period of redemption from mortgage foreclosure sales and sales of real estate upon execution, without violating the Fourteenth Amendment, or the contract clause of the Federal Constitution. The power of the state to enact such legislation was found to rest on the police power reserved to the states. Such police power, however, does not rest in the Federal Government. In re Lowmon, supra; Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194. The amended Frazier-Lemke Act must be sustained, if at all, upon the grounds that it was a proper exercise of the bankruptcy power vested in Congress, viewed in the light of prevailing local rules of property. In re Lowmon, supra; Brockett v. Winkle Terra Cotta Co. (C.C.A.8) 81 F.(2d) 949.

There is a marked distinction between the statute here under consideration and that considered in Home Building & Loan Association v. Blaisdell, supra. There, as between the mortgagee-purchaser, all obligations remained the same; the period of redemption was extended; the court fixing payments to be made to be applied in or toward payment of taxes, insurance, interest, and mortgage indebtedness. If the mortgagor redeemed, he paid the full sale price, plus interest, and less payments thereon. If he did not redeem, the mortgagee-purchaser acquired the property. The ordinary incidents of the sale were preserved with compensation to the mortgagee for the delay.

Appellants make the further contention that the court should not have assumed jurisdiction because the record discloses no equity in the property and no reasonable prospect of rehabilitation by the debtor. This argument proceeds upon the assumption of the constitutionality of the statute, but as we are of the view that the statute is unconstitutional, a consideration of this question would seem to be quite unnecessary.

The closing words of Justice Brandeis' opinion in Louisville Joint Stock Land Bank v. Radford, supra, so aptly express our conclusion in this case that we here reproduce them. It is there said: "For the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public."

The order appealed from is therefore reversed, and the cause is remanded for further proceedings consistent herewith.