### In re CAFFALL OIL CORPORATION.

### No. 5834.

District Court, W. D. Louisiana, Lake Charles Division.

Nov. 2, 1937.

On Motion for a Preliminary Injunction Feb. 18, 1938.

Cline, Thompson & Lawes, of Lake Charles, La., and J. H. Heinen, of Jennings, La., for proponents.

Modisette & Adams, of Jennings, La., for opponents.

Dufour, St. Paul, Levy & Miceli, of New Orleans, La., for Canal Bank & Trust Co.

W. W. Heard, of Lake Charles, La., for Stanolind Oil & Gas Co.

DAWKINS, District Judge.

The Caffall Oil Corporation has proposed a plan of reorganization, which in substance provides that all of its capital stock shall be excluded from participation, and its bondholders, with claims in the principal amount $227,700 and $6,261.75 accrued interest, shall receive all of the stock of the reorganized corporation, amounting to the sum of $22,770 par value, or one-tenth of the face of the bonds; the only ordinary creditor being its attorneys for their fees, to continue unsecured and be paid in due course; and the claim of Stanolind Oil & Gas Company, consisting of a judgment with principal, interest, and attorneys fees amounting to the sum of $10,246.41, secured by judicial mortgage recognizing a vendor's lien against 131 acres of land of the debtor, obtained and recorded against a former owner of the land and superior in rank with respect to this particular property to the rights of the bondholders, should be reduced to the sum of $3,500, which is to bear interest at 6 per cent. from January 16, 1937, and in consideration of said reduction said company shall receive a paid-up mineral lease upon the lands on which it holds the lien for three years, and shall take "no legal action for the collection of the judgment * * * for a period of three (3) years from the date of the confirmation of this plan." It is further provided that any income realized from the property known as the "Hoyt Farm" (being the property on which the Stanolind Oil & Gas Company holds its judicial mortgage and lien) shall be expended in the following manner:

(1) To pay the taxes on the property;

(2) To pay premiums for insurance on the property;

(3) To pay expenses incident to absolutely necessary repairs;

(4) To pay the Stanolind Oil & Gas Company in reduction of the hereinabove mentioned judgment.

It is further provided that the business of the corporation shall be conducted by the "present officers and board of directors, and or their successors, * * * without remuneration, and in accordance with the provisions of the charter of this corporation as amended to conform to the hereinabove proposed plan."

The plan has been accepted in writing (as required by section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, under which this proceeding was filed) by more than three-fourths of the bondholders, the Stanolind Oil & Gas Company, the sole ordinary and general creditor, to wit, the attorneys for the debtor, and by more than three-fourths of the outstanding capital stock of the debtor.

The assets of the corporation are listed as follows:

| | |
|---|---|
| Cash on hand | $ 270.84 |
| Frozen balance in Calcasieu Ntl. Bank $137.57 | 10.90 |
| Interest in real estate of the book value of $391,595.00 | 41,250.00 |
| Total | $41,530.84 |

The purpose is to relieve the debtor of the heavy overhead of interest on the bonded and other indebtedness and, in effect, to give the bondholders, in the proportions which the amounts of their claims bear to the total, the entire stock ownership of the corporation. The present stock is, with a few exceptions consisting of small amounts, also owned by the present bondholders.

At the hearing Mrs. Mary A. Dalby, Neal Whisenhunt, and C. E. Pool, holders of $4,600, $1,600, and $5,000, respectively, of the first mortgage bonds of the debtor, opposed the plan of reorganization on the grounds:

(1) That they cannot be compelled to take stock in place of their bonds for the reason it would deprive them of their property without due process of law "by transferring them from the position of secured creditors with first mortgage to the rank of ordinary, unsecured stockholders without any protection as creditors, and also would place Messrs. J. H. Heinen and Cline, Thompson & Lawes, whose claim against the corporation for services, * * * in the sum of $1500.00, is a mere ordinary, unsecured claim, in a preferential position as first creditor."

(a) That it is an "obvious attempt * * * to prefer the Stanolind Oil & Gas Company, * * * giving it the rank of a preferred creditor over opponents in violation of the Fifth and Fourteenth Amendments to the Federal Constitution, and sections 2 and 6 of article 1 and section 15 of article 4 of the State Constitution."

The same individuals have also filed a motion to dismiss these proceedings for the following reasons:

(1) The proposed plan is "inequitable, unfair, unreasonable, unconstitutional and null and void, for it seeks to destroy your movers' lien and mortgage without providing payment of the bonds";

(2) That it proposes to grant to Stanolind Oil & Gas Company, whose claim is inferior in rank to the movers' except as to the 131 acres of land upon which the judicial mortgage rests, a preference over the rights of movers;

(3) That the plan proposes to place the attorneys, whose claims are unsecured, also in a superior position over the movers;

(4) That the plan "is impracticable and unbusinesslike, is not filed in good faith, and is not a compliance with the provisions of section 77B of the National Bankruptcy Law [as amended] * * *";

(5) It contemplates the "transposing" of the positions of creditors with inferior rights to positions superior to those of movers, in violation of the same provisions of the Federal and State Constitutions as set out in the opposition to the plan.

At the final hearing on the plan, at which it was submitted for consideration of the court, the attorneys, J. H. Heinen and Cline, Thompson & Lawes filed in this proceeding a document in which it is stated:

"That in the interest of seeing said plan approved by the court your appearers agree to withdraw their claim against the said corporation, in the event of the plan in all other respects being approved by this honorable court." This document is verified by the oath of Robert Lawes, a member of the firm of Cline, Thompson & Lawes, in which he swears "that he is one of the attorneys for the appearers in the foregoing petition (meaning the document quoted from immediately above), that all of the allegations contained therein are true and correct, and that he has been authorized by his principals to execute the waiver contained therein." In the brief submitted in support of confirmation of the plan, which is signed only by Cline, Thompson & Lawes, attention is called to the waiver, and it is stated that the said claim for $1,500 of said firm and the said J. H. Heinen need not be discussed herein in view of the fact that the holders of that particular claim have, in the interest of seeing the proposed plan of reorganization eventually consummated, agreed to waive, in the event of the consummation of said plan, their right to any part of the $1,500.

Of course, if this claim is lawfully eliminated and the corporation will not at any time have to pay it, then the ground of complaint by the dissenting bondholders on that score has been removed.

With respect to the claim of the Stanolind Oil & Gas Company, as I understand it, the proposal is that the amount of the judgment, which rests against the particular 131 acres of land on which it has a vendor's lien and mortgage superior to any rights of the bondholders, is to be reduced to $3,500, in consideration of the granting of the three-year paid-up lease on the same land, that it will look to this particular property alone in the future for payment of the balance, and does not and will not assert any claim against the debtor or the new company after reorganization otherwise. This being true, that provision can be clearly set forth in the decree of confirmation so that there will be no question about it in the future. This claimant, admittedly, has no general claim against the debtor, but only a judgment against a previous owner of the land, which operates as a judicial mortgage recognizing a special conventional vendor's lien, and which secured the debt before the judgment was obtained. The property was acquired by the debtor subject to that judgment, and it is not at this time a claim against the estate, other than in its effect against the particular lands.

I do not believe the opponents in these circumstances have shown any prejudice to their rights, since the title to the lands will remain in the new company, and if oil or other minerals should be discovered within the delay period of three years of the lease, during which the Stanolind Oil & Gas Company has agreed to defer action for the collection of the balance of $3,500, the benefits thereof would inure to opponents through their ownership of the stock and they would actually receive an advantage in that this claimant might

presently execute its judgment and divest the debtor of its interest in that particular property, and by the further fact that the claim against the land at the end of the three-year period, if development has not been had, or fails to produce, will have been reduced from more than $10,000 to $3,500, plus 6 per cent. interest from January 16, 1937.

■ This brings us to the remaining issue as to whether, where more than 75 per cent. of the creditors of opponent's class, to wit, the bondholders, have accepted the plan, and all other classes have approved by more than the requisite percentages, this minority group are correct in the contention that the proposal, in so far as they are concerned, violates the constitutional provisions above mentioned. Opponents argue that if they are forced to give up their lien and take stock instead, they will be subject to the will of the majority stockholders and officers of the company as to future disposition of the property. It seems to be conceded that the chief "hope," or prospect of realizing by anyone of anything substantial from the assets of the debtor, depends upon whether oil or gas may be found in the properties owned by it. If this proceeding were dismissed and the bond mortgage foreclosed, the property would doubtless be bought in by the bondholders or a syndicate representing them, and for which they would pay with their bonds. Those not desiring to join in any plan to become owners could insist that sufficient cash be paid in to cover their pro rata share. If they joined in a purchase by allowing the use of their bonds in payment, they would be in substantially the same position as they would occupy if the present plan were approved—that is, a corporation or other entity would be formed to take title and they would be given stock or similar evidence of their interest, in the proportions which the amounts of their bonds bear to the entire bonded indebtedness. The only possible difference which could arise would be in their refusing to join other creditors of their class in purchasing the property with bonds and insisting upon cash. This would be calculated to reduce the price which would be paid for the property by the majority to whatever the court might, if it thought proper, fix as a minimum upset figure to be paid. It would also doubtless carry with it the loss of any advantage to be derived from the adjustment with the Stanolind Oil & Gas Company with respect

to the tract of 131 acres, upon which it holds a judicial mortgage exceeding at this time the value. The remaining assets consist of an undivided interest in two tracts of 33½ acres and 80 acres, respectively, valued at $550, certain lots in the town of Jennings, valued at $700, a two-fifths interest in 117 acres, valued at $5,000, and a tract of 160 acres with improvements thereon, except those placed on said property by the lessee, and less "an undivided ¼ interest therein" appraised in the plan at $25,000, or a total of $31,250, to meet the principal of $237,000 and interest of $6,261.75, of the bonds as of the date of filing of the plan.

In so far as the feasibility of the plan is concerned, if a foreclosure were had and third persons bought the property for cash, provided anyone could be found to do so, the bondholders would receive pro rata whatever it brought and be through with the matter; if not, then the other alternative of acquiring it with the bonds and readjusting its ownership through a new corporation or similar entity would seem inevitable. More than the requisite percentages are not in favor of taking the risk as to cash, which might be realized from a sale to others or the foreclosure and purchase with the bonds, with the consequent loss of the Stanolind Oil & Gas Company proposal, but prefer the plan proposed. Can they compel the opponents to accept it?

Section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, among other things provides:

"(b) A plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise; * * * (9) shall provide adequate means for the execution of the plan, which may include the transfer of all or any part of the property of the debtor to another corporation or to other corporations, * * * or the retention of the property by the debtor, the distribution of assets among creditors or any class thereof, the satisfaction or modification of liens, indentures, or other similar instruments, the curing or waiver of defaults, extension of maturity dates of outstanding securities, the change in interest rates and other terms of such securities, the amendment of the charter of

the debtor, and the issuance of securities of either the debtor or any such corporation or corporations, for cash, or in exchange for existing securities, or in satisfaction of claims or rights, or for other appropriate purposes."

If a minority, as here, could prevent a reorganization, simply because the nature of the security or interest in the debtor's estate would be changed from that of a creditor with a lien to one of ownership in the property through stock, then the purposes of this section could not be accomplished in any case where there was disapproval, no matter how small the interest, and the clear intention of Congress to remove such an obstacle to a fair adjustment of the affairs of an embarrassed or insolvent corporation would be frustrated. There would remain in the dissenters power to compel undue consideration as the price of their approval, or that their interests should be bought out at figures which they might demand, as of old.

The statute was passed under the provision of the Constitution empowering Congress to enact uniform laws on the subject of bankruptcy, article 1, § 8, cl. 4, and while subject to the restriction of the Fifth Amendment of the same organic law as pointed out in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, construing the first Frazier-Lemke Amendment, 48 Stat. 1289, it nevertheless authorizes the legislative department to prescribe, I think, rules which will permit a change, having the approval of the percentages provided in section 77B, in the form of the interest or right to the property which the creditor or other claimant has in the assets of the debtor, so long as the relative positions are not changed and inferior claimants are not advanced ahead of those of superior rank. In the case of In re Georgian Hotel Corporation, 7 Cir., 82 F.2d 917, the plan of reorganization required the surrender of half of the face value of the bonds for stock in the reorganized corporation, which the Court of Appeals for the Seventh Circuit upheld and review was denied by the Supreme Court, Allen v. Georgian Hotel Corp., 298 U.S. 673, 56 S.Ct. 939, 80 L.Ed. 1395. It would seem logically to follow if the required surrender of the lien as to half the claim was not an infringement of the invoked constitutional provisions, then it could, with no greater force, be said to apply to the whole. See also the numerous cases cited in the footnotes to the last mentioned case on page 919 of 82 F.2d.

My conclusion is that the plan is feasible, in so far as any reasonable solution of the debtor's affairs can be had, it is for their best interest and there is no unjust discrimination as to anyone. For these reasons, it should be affirmed.

Proper decree should be presented.

### On Motion for a Preliminary Injunction.

The debtor, Caffall Oil Corporation, is in the process of reorganization in this court under section 77B of the Bankruptcy Law, as amended, 11 U.S.C.A. § 207.

On May 26, 1936, Carroll E. Walter and others filed suit in the state court for Jefferson Davis parish, against Frank B. Caffall, individually, Caffall Implement Company, Inc., and the Caffall Oil Corporation, "a reincarnation of Caffall Implement Company, Inc.," seeking to subject the property and the assets of the debtor to the payment of an alleged claim aggregating $8,841.67, with 8 per cent. interest from 1920 and 10 per cent. attorney's fees. The suit was filed by the same counsel who has represented other interests opposing the reorganization proceedings under section 77B, and service upon the petition in the state court was accepted by the counsel who have represented the debtor before this court. The cause was put at issue and trial thereof concluded on February 24, 1937. The court handed down an opinion on September 7, 1937, in favor of plaintiffs therein, as to a part of their demand, in the sum of $5,734.20, with interest as claimed and attorney's fees, setting aside certain transactions by which the title to substantially all of the property of the debtor was acquired and subjecting it to the claim of said plaintiffs.

In the meantime, on May 4, 1937, the proceedings in this court under section 77B had been filed. The plaintiffs were not scheduled as creditors, and no mention of the litigation in the state court was ever made to the presiding judge, either by the attorneys for the debtor or the present attorneys for respondent, who were appearing in those proceedings, until the application for the stay order and preliminary injunction herein was presented.

Motions for a new trial were made by both sides in the state court and overruled

on December 17, 1937. Thereupon, on December 21, 1937, the debtor made the present application, a stay of proceedings in the state court was ordered, and a rule to show cause why preliminary injunction should not issue was set for hearing at Opelousas on January 3, 1938. On that date the matter was submitted upon a stipulation of facts by counsel and the court finds the facts as stipulated. In addition thereto, it is shown that a copy of the petition with the order staying the proceedings and directing the issuance of a rule to show cause was handed to the judge of the state court on December 24th, and notwithstanding on the 28th of that month a decree was signed in favor of the plaintiffs-respondents in the present proceeding.

It also appears from the briefs and oral argument of counsel that circumstances leading up to this litigation over a long period of years were substantially as follows:

Frank B. Caffall and the Caffall Implement Company, Inc. (hereafter called the Implement Company), were both financially involved about the year 1923, and made a joint surrender of all their property for the benefit of their creditors, title to which was placed in the name of the Implement Company, and was administered by three trustees for a period of approximately eighteen months. At the end of that time the trusteeship was terminated, and on application to the state court, a receiver was appointed for the property, who continued to administer it under the supervision of that court from December, 1924, until March 9, 1935. On the latter date, a decree was rendered for the return of the estate to the Implement Company, and the latter in turn conveyed it to the Caffall Oil Corporation (hereafter called Caffall Corporation), the present debtor, which assumed all of the indebtedness of the Implement Company shown by the receiver's final account. Thereafter, the Caffall Corporation executed a general mortgage and issued bonds to the creditors whose claims were thus assumed.

In a written opinion the state court recites the facts and circumstances upon which the claim of respondents, as plaintiffs here, were based, a copy of this opinion being made part of the return of respondents here. While copies of the judgment discharging the receiver in the state court and approving his account, and the account showing the list of creditors whose claims were recognized, are not before me, it is asserted in

brief, and not disputed, that these notes of Frank B. Caffall, dated in 1920, upon which the respondent's suit in the state court was based, were not so listed, they received no part of the bonds issued to creditors, were not parties and had no official notice of the receivership proceedings or reorganization following March 9, 1935. Respondents in their suit in the state court alleged fraud in the transfer from Frank B. Caffall to the Implement Company, the eighteen months' trusteeship and the eleven years' receivership in the state court, as well as the reorganization following, but at the same time, under some theory which I am unable to fully understand at this time but which was adopted by the state court, contended that these transactions and proceedings had the effect of recognizing their claims which otherwise would have long since prescribed, and which prescription was pleaded and overruled in the state court. As a result, if the decision of the state judge should stand, the effect would be to entirely upset and disrupt the reorganization proceedings which were filed in this court on May 4, 1937, and which have been approved.

With the approval of the petition filed herein, this court, under express provisions of the Bankruptcy Law, § 77B, as amended, and by clear expression of its orders, took jurisdiction of the debtor and its property, both actually and constructively in its possession wherever situated. It had the right to stay or enjoin suits against the debtor or its property in other courts. Subsection (c) § 207, cl. 10, title 11, U.S.C.A.; Allen v. Cloisters Building Corporation, 7 Cir., 79 F.2d 694. If the respondents are bona fide creditors of the debtor, or have a claim supported by a lien, or otherwise against any of its property, then they should be parties to the reorganization, or before they are permitted to upset the proceedings in this court, those claims should be conclusively established in a jurisdiction and manner which will be binding upon all parties, including the bondholders whose claims have been filed, proven, and voted in favor of the plan of reorganization. Had the debtor brought the suit in the state court to the attention of this court timely, it could have been stayed and perhaps the question of whether respondents should prove their claims in the present proceeding been determined. On the face of it, the suggestion that a receivership pended in the state court for eleven years and that the other steps taken from 1920, when the re-

spondents' notes matured, were simulations and were without their knowledge, seems extraordinary to say the least. My view is that no further action should be permitted in the state court until a full hearing of this matter can be had. The having of the decree signed there after notice of the stay and before hearing upon the rule for preliminary injunction was not altogether consistent with the respect due the orders of this court, in a matter in which it unquestionably had jurisdiction under the Bankruptcy Law.

A preliminary injunction should issue.

Proper decree should be presented.